494 A.2d 150 (1985)
William R.T., Appellant,
v.
Bonnie R.T., Appellee.
Supreme Court of Delaware.
Submitted: November 13, 1984.
Decided: April 25, 1985.
Charles Gruver, III, (argued), of Bayard, Handelman, & Murdoch, P.A., Wilmington, for appellant.
Joel D. Tenenbaum and Michael Bell (argued), of Woloshin, Tenenbaum & Natalie, P.A., Wilmington for appellee.
Before HORSEY, MOORE and CHRISTIE, JJ.
CHRISTIE, Justice.
Upon appeal from the Superior Court. Reversed and remanded.
In this case we must decide to what extent a spouse's "net income" derived from a private business may be restructured by the Family Court in arriving at a proper amount of child support.
Appellant-husband has appealed from a judgment of Superior Court, which in turn had affirmed an order of Family Court increasing the husband's child support obligation to $456.11 per month. The husband's primary contention on appeal is that both courts failed to give adequate consideration to his legitimate business expenses and his required debt reduction obligations in determining his "net income" available for child support. We agree and reverse.
*151 In July of 1979 the parties entered into a separation agreement which provided, among other things, for the custody and support of their three minor children. The pertinent portion of this agreement states:

Child Support. As set forth in previous paragraphs, this Separation Agreement presently contemplates one child residing with husband and two children residing with wife. It is the intention of the parties that support be established under the guidelines of the Family Court's application of the "Melson Formula". At the present time, this would result in a support obligation on the part of husband in the sum of $_____. The aforesaid money shall be made available to wife, each month in two equal installments due and owing the first and fifteenth of each month.
The parties shall compare their respective earnings three months from the date of this Agreement and each year thereafter for adjustments by way of "offset credit" resulting from the application of the "Melson Formula" which may be operative at that time, against respective earnings of the parties, and subject to any change with respect to custodianship of the children.
At the time of this agreement, husband was employed as a salesman and was earning commissions of approximately $15,000 per year. Under the agreement, the husband's support payments were originally set at $150 per month but were increased shortly thereafter to $178 per month.
In November of 1979 the husband obtained new employment at a salary of approximately $27,000 per year. In light of his salary increase, the husband recomputed his child support obligation as required by the separation agreement. This resulted in the increase of his support payments to $300 a month. The increased payments commenced in January 1980.
About one year later the husband was informed by his employer that his performance was unsatisfactory, and that he should begin to seek new employment. During the next few months the husband made a reasonable and continuing effort to secure employment elsewhere. He prepared a new resume, registered with employment agencies, and answered advertisements in the newspapers and trade magazines. Despite persistent efforts, he was unable to find employment.
Facing the prospect that he was about to be fired, husband left his employment in March of 1981. He was still unable to find employment, and by August of 1981 it became clear to him that he was going to be unable to find employment. He then decided to look for a business to buy. Finally, the husband established a corporation (with himself as sole shareholder), and on September 1, 1981 he purchased a small restaurant.
During his period of unemployment lasting about six months, husband collected approximately $130 per week in unemployment compensation. Despite the drastic decrease in his income, husband continued to pay child support of $300 per month. It appears that he used some of the proceeds from the sale of his personal residence to make these payments.
The purchase price of the business was $55,000. The husband loaned his corporation $15,000 so that it could make the initial payment to the seller. The remaining $40,000 of the purchase price was secured by a promissory note to the seller, with the corporation as the obligor. The principal of the note was to be paid back to seller over a period of five years along with 10% interest. The note was secured by the business equipment and the business lease.
From the outset the financial returns of the business were disappointing. The financial statement of the restaurant for the first 12 months of its operation reveals the following: Sales  $176,226; gross profit  $85,032; net income  $1,558. The net income figure was, of course, determined by subtracting various business operating expenses, such as depreciation, amortization, and interest payments from the gross profit figure.
*152 The husband testified that he worked 60 to 100 hours per week during the first year, and he took no vacation. His responsibilities included managing the facility, cooking pizzas, and, for a time, he also personally made delivery of pizzas to customers' homes.
Sometime during the initial period of his business venture the husband remarried. His new wife had minor children by a prior marriage. In October of 1981, about one month after husband's purchase of the restaurant, his eldest daughter moved from the husband's residence to the home of his former wife. Although he was drawing only about $75 a week from the business, the husband then increased his child support payment to his former wife to $350 for the month of October. He paid $380 in November, $350 in December, and $400 in January of 1982.
It appears that the former wife requested the increased child support payments due to various additional expenses incurred by the children. To make these payments, husband used funds which he had borrowed from the Bank of Delaware on a $5,000 line of credit which had been extended to husband, as an individual, when he purchased the business. As these funds ran low and the business cash-flow problems continued, husband decided to recompute his support obligations as permitted by the separation agreement. He sought the necessary financial information from his former wife as to her income, but she refused to comply with his request. As a result, husband estimated that his former wife had a gross income of $20,000 per year, and figured that his own gross income was $10,000 per year  mostly attributable to his unemployment compensation received during 1981. He then applied those figures to the calculations required under the Melson Formula.[1] He arrived at a support figure of $220 per month. In accord with these calculations, he began paying his former wife $220 in February of 1982.
In March of 1982 his former wife petitioned the Family Court for specific performance of the separation agreement. The husband responded by requesting the court to determine the appropriate child support payments under the Melson Formula. Hearings were held in the Family Court in December of 1982 and February of 1983, and the court heard testimony from the respective parties and from the husband's accountant.
A second financial statement was considered. It reflected the restaurant's financial situation for the final four months of 1982 and indicated that the business sustained a loss in the amount of $1,321 during that four-month period. The husband, however, continued to make payments of $220 a month.
In the decision rendered April 11, 1983 the Family Court judge recognized that net income is the key figure in the proper application of the Melson Formula. After reviewing the testimony of the parties and the various financial documents submitted to the court, the judge determined that husband's net income (for the 16-month period reflected in his two financial statements  September '81 through December '82) amounted to $1,230 per month. In reaching this determination, the judge disallowed and, therefore, added back as income, some of the expenses which had been deducted by the husband in his calculations. These disallowed expenses were: (1) depreciation on the business equipment; (2) amortization of costs associated with the purchase and initial organization of the business; (3) monthly lease payments to husband's present wife for the use of her automobile in connection with the business; and (4) interest and capital repayments which were paid by the corporation to the *153 former owner in accordance with the $40,000, 5-year, secured note.
In the Family Court's decision on the husband's motion for reargument, the Family Court judge explained the court's approach to the husband's net income calculation:
... [T]he court sought to make adjustments in the financial statements of respondent's corporation by whom he was employed as would make his situation and income for child support purposes comparable to that of a person employed by an unaffiliated employer. In the latter case, "monthly net income", the basic figure for calculating child support by the formula is the sum of salary, interest, dividends and other income without deductions for depreciation, amortization, automobile operation and expenses, principal and interest on car payments, interest on home mortgage or other debts.
Based on an assumed net income of $1,230 per month the Family Court designated $456.11 per month as the husband's child support obligation under the Melson Formula. This is more than he paid when his income was $27,000 per year (but at that time the payments were for only two children).
The husband was also required to make such payments retroactively from October 10, 1981 so that the total arrearages owed by the husband were found to be $4,249.98.
The Superior Court judge, in affirming the Family Court, noted that the expenses at issue were legitimate business expenses for federal and state income tax purposes, but he agreed with Family Court in the observation that such expenses should not be available to the non-custodial spouse to reduce his support obligations. The Superior Court judge seemed to be of the opinion that by his ruling he was refusing to allow husband to indirectly force his children to finance his business operation through reduced child support payments. We agree with this general objective, and we agree that the Family Court is not bound by usual accounting principles or by tax accounting when it assumes a net income (or cash flow) for child support purposes. However, any departure from basic accounting principles must be fair and reasonable and practical under all the circumstances.
The issue which confronts this Court on appeal is whether it was an abuse of discretion, under the special circumstances of this case, for the Family Court to disallow those expenses and operating costs related to the husband's business in determining his net income.
We must balance the fact that the payment of some of these expenses would eventually build up the husband's equity in the now struggling business against the fact that, in this case, non-payment would probably cause the husband to lose all that he had invested in the business and also his only ready source of continuing income.
The Family Court and Superior Court judges determined that the specified costs and expenses should be entirely omitted from calculations of the husband's net income for child support purposes. Appellant argues that the failure to consider such factors was improper, unfair, confiscatory and, at the very least, amounted to an abuse of discretion. See Emsley v. Emsley, Del.Fam.Ct., 467 A.2d 700 (1983) (where somewhat similar deductions were not allowed; but in at least one unreported Family Court case a business depreciation deduction was allowed by the court). Equitable decisions on these matters depend, of course, on the particular circumstances present in the case at hand.
We recognize the obligation to support children as the parent's first priority, and that such an obligation limits a parent's ability to purchase assets or to place himself in debt. See Emsley, 467 A.2d 700. However, there is no indication in this case that the husband was unwise or premature in terminating his prior employment, or that he otherwise attempted to arrange his finances so as to avoid child support payments. By contrast, in the Emsley case, *154 467 A.2d at 703, the business expenses which were claimed and disallowed were characterized as "[o]perating losses incurred by (the father) in connection with (his) real estate investments" and, therefore, could not be used to reduce the father's support obligation.
Here the separation agreement specifically provides that the Melson Formula is to be employed to calculate the appropriate child support payments. In that formula the net income of each spouse forms a starting point. The Family Court has adopted a definition of net income for use under such circumstances.[2]
This definition mandates that "business expense accounts" be regarded as income, but only to the extent that such accounts provide benefits which the employee would otherwise have to "provide" for himself. Moreover, the definition goes on to provide that "legitimate business expenses" are to be subtracted from income in calculating net income.
In attempting to arrive at an assumed net income figure for husband, the Family Court sought to adjust the income figures contained in his financial statements to make them comparable to the "typical employee" who is employed by an unaffiliated employer. In so doing, the judge noted that the "typical employee" is not allowed to deduct expenses such as "depreciation, amortization, automobile operation and expenses, principal and interest on car payments, interest on home mortgage or other debts." As a result, essential corresponding business-related expenses were not deducted from the husband's gross income in arriving at his assumed net income available for child support calculations.
However, to equate the personal expenses mentioned in the definition with business expenses creates an inequitable result not contemplated by the definition of net income. The attempt to account for the husband's business operations on a basis which would put the husband in the same position as an employee was unsuccessful in this case. "Typical employees" simply do not sustain legitimate and essential business expenses similar to some of those here encountered.
The Superior Court judge recognized that the Family Court, in determining net income in child support matters, is not bound by the Internal Revenue Code. The judge noted that the purposes behind the federal and state tax regulations are not the same as those codified in 13 Del.C. § 501 et seq., pertaining to child support.
The state and federal tax laws seek to reflect the taxpayer's income so that a uniform tax may be assessed. However, the Delaware child support statutes and the Melson Formula are concerned with arriving at a net income figure for each spouse, so that a fair amount of child support may be assessed. The calculations as to support payments may be based, in part, on an equitable evaluation of what is sometimes called "cash flow". In any event, some aspects of the tax laws are designed to encourage the growth in business enterprises, whereas the child support laws are necessarily concerned with the welfare of the children. When the two approaches to net income conflict, the Family Court is *155 free to depart from tax law accounting, but in so doing the court must show that the departure is reasonable and fair and practical under all the circumstances. See 13 Del.C. § 514(1).
Therefore, although the Family Court is not bound by the accounting rules which apply under tax laws, the generally accepted principles of proper accounting may not be disregarded by the courts if the net result is likely to be financial ruin and perhaps the complete loss of earning capacity of the spouse obligated to provide child support. See Solis v. Tea, Del.Supr., 468 A.2d 1276, 1283 (1983). Generally accepted accounting practices and practical economic realities are entitled to more weight than they have received in this case. Only if there are practical reasons to depart from these sound accounting practices, is the court free to make reasonable and equitable adjustments in net income in order to designate a fair amount for child support.
In this case the monthly net income figure arrived at by the Family Court does not accurately reflect husband's true financial circumstances or the practicalities of the situation. At least a part of the husband's disallowed expenses and operating costs appear to be reasonable and also essential to his continuing ability to support himself and his children.
An allowance for depreciation recognizes the fact that the assets of husband's business are worth less each year and eventually must be replaced. Furthermore, in this case much of the capital tied up in the initial investment did not belong to the husband in the first place. The startup costs of his business were apparently a necessary part of his scheme to make a living. More importantly, the principal and interest installments which must be paid each month to the business' former owner, represent cash payments which the husband simply does not have available except from his business. It is unsound to consider the cash coming into the husband's business as flowing through to net income without deducting (to the extent that they are reasonable) the items which must be taken from his cash flow in order to maintain his business operations.
Examination of the practical effect of the Family Court's ruling leads this Court to rule that there must be a recalculation of his assumed net income available for child support and of the payment required in the support order. See Kurpiewski v. Kurpiewski, 254 Pa.Super. 489, 386 A.2d 55, 58 (1978).
It is, of course, true that as husband pays off his five-year loan, he may be able to continue to build equity for himself in his business while at the same time he may have limited funds to pay child support. This growing equity may not be fully reflected in the funds which are now deemed to be available for child support and, therefore, it is not entirely inaccurate to picture the husband as diverting money from his children while he is building up his own assets. However, it would not be in the best interest of the minor children to run a substantial risk of destroying the business at this point. See Solis v. Tea, supra. If the business does prosper, the husband's net income is likely to increase; this in turn may ultimately be of future benefit to his family. The child support payments he is now required to make must, however, be based on current economic realities.
We reverse the order of Superior Court affirming the Family Court, and we remand the case to Superior Court for further remand to Family Court for a reasonable, fair, and practical recalculation of the amount of child support the husband is required to pay based on a recalculation of the husband's net income in accord with the terms of the Melson Formula. Such recalculation should take present circumstances into account as to future child support. It should also arrive at fair amounts of child support for the various past time periods involved since it is clear that husband's income (and also any assumed income the court may designate) varied during the periods in question.
NOTES
[1] This formula has been devised by Family Court in an effort to determine appropriate child support payments. Because of the contractual provisions here employing the Melson Formula, our decision does not turn on the basic question of the Formula's validity, and nothing we say bears on that subject.
[2] PART I. PRIMARY CHILD SUPPORT STEP A

1. DETERMINE EACH SUPPORT OBLIGOR'S NET INCOME.
Add:
a. Income from employment, as well as all other sources (such as, pensions, dividends, interest, etc.); and
b. Business expense accounts to the extent that they provide the support obligor with something he would otherwise have to provide (such as, automobile, lunches, etc.).
Subtract:
a. Income taxes figured on the basis of the maximum allowable exemptions;
b. Other deductions required by law, including attachments and child support payments made pursuant to court order or written separation agreement;
c. Deductions required by the employer, or the union, except credit union payments;
d. Legitimate business expenses;
e. Benefits such as hospitalization insurance which are maintained for the obligor's dependents. (Emphasis supplied.)