Carlos SHUBA, M.D.,[1] Respondent
Below, Appellant,

v.

DIVISION OF CHILD SUPPORT EN-
FORCEMENT ex rel. Reba REESE,
Petitioner Below, Appellee.

Supreme Court of Delaware.

Submitted: May 23, 1989.
Decided: Aug. 16, 1989.

Jean A. Crompton of Crompton and Solo-
mon, Wilmington, for appellant.

Martha F. Sackovich and Allison E. Hare,
Deputy Attys. Gen., Wilmington, for appel-
lee.

Before HORSEY, MOORE and
WALSH, JJ.

HORSEY, Justice:

The question presented in this appeal
from Family Court's imposition of an order
of child support is whether the Delaware
Child Support Formula [the "Melson For-
mula"], with its Standard of Living Adjust-
ment ["SOLA"], is the appropriate stan-
dard for determining the amount of child
support to be provided for a child of parties
who never married or lived together as a
family unit. The trial court found the Mel-
son Formula, including the SOLA section,
to be the appropriate standard for deter-
mining the child's support needs and af-
firmed the master's determination of the
father's child support obligation. We af-
firm, finding no error of law or abuse of
discretion.

Carlos Shuba, M.D. ("father"), a 53–year
old psychiatrist, became romantically in-
volved with Reba Reese ("mother") in June
1984. Father moved into mother's apart-
ment in March 1985. He paid the $300 per
month rent and helped with other expenses.
Mother became pregnant in March 1985.
Mother had long wanted a child and had
investigated adoption prior to her relation-
ship with father. Father wanted her to
have an abortion, and the disagreement
eventually resulted in mother's moving out
of the apartment in July 1985. A child was
born in December 1985. The three have
never married or lived together as a family
unit. The trial court found that father has

---

**1.** Pursuant to Supreme Court Rule 7(c), the
names of the parties in the caption are pseudo-
nyms selected by this Court.

shown "little interest in becoming involved with the child."

In April 1986, the Division of Child Support Enforcement, on behalf of mother, filed a petition for nonsupport of the child. Father, after initially denying paternity, admitted parentage following a blood test establishing the probability to be 99.197. When father would not agree to having his child support obligation calculated according to the Melson Formula, an interim order for child support of $400 per month was entered by a master. Later, the master set father's permanent obligation at $679.00 per month, following hearing. Father then petitioned for *de novo* review by the Family Court of the master's order; and, following an evidentiary hearing, Family Court found the Melson Formula, including living standard adjustment, to be applicable and upheld the amount of the master's support award as appropriate. Father then docketed this appeal.

■ On appeal, father contends that the trial court erred as a matter of law and abused its discretion "by not giving proper weight to 13 *Del.C.* § 514(2)(3) in its blanket application of the Delaware Child Support Formula under the particular facts of this case." In essence, he contends that the SOLA portion of the Melson Child Support Formula should not be applied to determine the needs of an illegitimate child (sometimes referred to as a "nonmarital" child) whose parents have never lived together long enough to establish a manner or standard of living. His premise for this argument is that application of the SOLA portion of the Melson Formula is "inconsistent" with section 514(2) of Title 13. The inconsistency arises, father argues, from the unrefuted fact that mother, father, and child never lived together as a family unit. Hence, father says his standard of living must be disregarded because it is rendered "irrelevant" by the overriding language of subsection (2) of section 514. Secondly, father argues that the dollar amount awarded, $679, "bears no relationship to the ordinary and reasonable needs of the child," and will leave him with

an insufficient amount for his own maintenance. Thus, appellant argues: *one,* that the SOLA section may not be applied in this case as a matter of law because contrary to section 514(2) because the parties were not "living under the same roof"; and *two,* that the trial court abused its discretion either in not finding application of the Melson Formula to be rebutted by the operative facts or in setting an excessive sum under the circumstances. We find none of appellant's arguments persuasive.

The starting point for our determination of the questions presented is this Court's recent decision in *Dalton v. Clanton,* Del. Supr., 559 A.2d 1197 (1989), Holland, J. (April 6, 1989), decided after the briefing of this appeal. There this Court addressed father's first contention, that the SOLA step of the Melson Formula is inconsistent with 13 *Del.C.* § 514. The Melson Formula was also attacked as a "mechanical calculation" that disregarded the statutory factors of section 514 in favor of a court-created formula that was inconsistent with the Family Court's statutory obligations. To the contrary, we concluded that "as a rebuttable presumption, the Melson Formula is consistent with all of the factors set forth in 13 *Del.C.* § 514." *Id.* at 1199. However, we emphasized that application of the Melson Formula "requires more than the mechanical application of an algebraic equation." *Id.* at 1212. We further cautioned:

The mathematical result which is the product of the Melson Formula can never be the basis of a child support order under the Delaware procedure, until that result passes the litmus test of the rebuttable presumption. When the calculation according to the Melson Formula is mixed together with the specific facts in a case, the result must be equitable. If the result is inequitable, the presumption is rebutted, and the support calculation pursuant to the Melson Formula must yield to the extent that is necessary to balance the equities in the case.

*Id.* at 1212.

We turn to 13 *Del.C.* § 514, which provides as follows:

**§ 514. Determination of amount of support.**

In determining the amount of support due to one to whom the duty of support has been found to be owing, the Court, among other things, shall consider:

(1) The health, relative economic condition, financial circumstance, income, including the wages, and earning capacity of the parties, including the children;

(2) The manner of living to which the parties have been accustomed when they were living under the same roof;

(3) The general equities inherent in the situation.

Appellant's first argument focuses on subsection (2). Because the evidence was unrefuted that he, the child's mother, and the child at no time lived "under the same roof," father argues that subsection (2) implicitly bars a SOLA or living adjustment for his child based on father's separate income being substantially greater than that of the mother. He states that if the statutory term "parties" refers to simply father and mother, then the controlling standard of living for determining his support obligation was that established during the five-month period that father was living with mother in *her* $300 per month rented apartment. Alternatively, if the term "parties" refers to simply mother and child, father argues that his standard of living remains irrelevant as a matter of law under section 514. Thus, father concludes, a SOLA, or Standard of Living Adjustment, is not permitted for a so-called "nonmarital" child because the parties' living arrangement does not satisfy the requirements of subsection (2). In *Dalton v. Clanton,* a similar constructional argument of section 514 was made and rejected by this Court. Therein we stated:

We have concluded that the procedure used by the Family Court of the State of Delaware, in deciding child support cases, known as the Melson Formula, and reflected in the provisions of Family Court Civil Rule 52(c) and its official Forms 509p and 509, is consistent with the letter and the spirit of 13 *Del.C.* §§ 504, 514 and 10 *Del.C.* § 907(5).

We attach particular significance to the fact that the Melson Formula is recognized and operates as a rebuttable presumption in all child support cases. As a rebuttable presumption, the Delaware procedure provides for a uniform approach to child support decisions, unless the Family Court is persuaded that an application of the Melson Formula would be inequitable. *Gregory J.M. v. Carolyn A.M.,* Del.Supr., 442 A.2d 1373, 1377 (1982).

*Id.* at 1210–11 (citations omitted).

We think it reasonably clear, as a matter of statutory construction, that the SOLA portion of the Family Court Formula is not solely derived from or dependent upon subsection (2) of section 514. In our view, the living adjustment is also responsive and attributable to subsections (1) and (3). In particular, section 514(1) directs the Family Court to consider the earning capacity of the parties in their context as parents, not in the context of marital partners. Therefore, the inability of a trier of fact to find a "familial" or marital standard of living of the parties is not essential for the child to be entitled to SOLA or the benefit of an incremental amount of support based on a higher standard of living of a more affluent noncustodial parent.

Also supportive of this result are section 514(3) and Family Court Civil Rule 52. Subsection (3) of section 514 specifically directs the Family Court, in awarding support, to consider "the general equities inherent in the situation." Family Court Civil Rule 52 also directs the Court, in fixing support, to consider, among other factors, "the available net income for a standard of living adjustment (SOLA) to be paid by each support obligor after meeting their own primary needs and those of dependents." Parentage, not the existence of a marital partner relationship, is the controlling factor.

In *Dalton,* we recognized that the Melson Formula, as embodied in the Family Court Rules and forms, was consistent with 13 *Del.C.* § 514. In *Dalton,* we also recognized that one of the basic principles

upon which the Melson Formula is premised is that "where income is sufficient to cover the basic needs of parents and all dependents, the children are entitled to share any additional income so that they can benefit from the absent parent's higher standard of living." *Id.* at 1203. This basic principle is simply an articulation of the "general equities inherent in this situation." 13 *Del.C.* § 514(3). To remove from the Melson Formula the SOLA for a nonmarital child would be inequitable. Removal of the SOLA would leave such a child with an award of support only designed to meet a child's primary or minimum needs for subsistence. The Delaware child support formula was also last "reviewed and updated," according to the trial court, in 1984. Thus, Part I of the Melson Formula, which addresses primary needs of a child, appears to be based on outdated cost of living information. To condition application of Part II of the Melson Formula, the SOLA portion, upon the proclivity of the child's parents to establish a living relationship with each other would be not only inequitable, but a denial of equal protection.

The father concedes that 13 *Del.C.* § 514 makes no distinction in benefits for a child born out of wedlock or a child of parents who have never lived together as a family unit. Any contention to the contrary would be clearly violative of equal protection and due process and would compromise the underlying purpose of a child support statute, namely, the best interest of the child. The United States Supreme Court has considered the issue of disparate treatment of legitimate and illegitimate children and has held such distinctions to be unconstitutional. *Mills v. Habluetzel,* 456 U.S. 91, 92, 102 S.Ct. 1549, 1551, 71 L.Ed.2d 770, 773 (1981).

> Once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers, there is no constitutionally sufficient justification for denying such an essential right, simply because its natural father has not married its mother. For a State to do so is illogical and unjust.

*Mills v. Habluetzel,* 456 U.S. 91, 93, 102 S.Ct. 1549, 1551–52, *citing Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). The Supreme Court has also struck down discrimination on the basis of illegitimacy in related areas of the law: wrongful death claims, *Weber v. Aetna Casualty and Surety Co,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); workmen's compensation claims, *Gomez v. Perez, supra;* and inheritance from a natural father, *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). Our Family Court has similarly ruled that children of parents who do not live together are not to be treated differently from those whose parents are married or do live together. *Prouse v. Prouse,* Del.Fam., File No. 0–4778, Ableman, J. (July 5, 1984).

Father relies principally upon New York decisional law to support his claim for distinctive awards of child support as between marital and nonmarital children. We decline to follow the line of authority articulated in *Kathy C.J. v. Arnold D.,* N.Y.App. Div., 116 A.D.2d 247, 501 N.Y.S.2d 58 (1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 979 (1987) for several reasons. New York case law appears to be premised on New York statute law that distinguishes between marital and nonmarital children in determining appropriate amounts of child support. As noted, our statute law permits no such distinction. Other courts have held such a distinction to be prejudicial and unlawful. *Polk v. Harris,* Md.Ct.Spec.App., 46 Md.App. 591, 420 A.2d 1004 (1980); *Nichols v. Horn,* Pa.Super., 363 Pa.Super. 301, 525 A.2d 1242 (1987). To recognize such a distinction is not only constitutionally suspect, but also fundamentally at odds with our courts' overriding interest in serving the best interests of the child. *See Solis v. Tea,* Del. Supr., 468 A.2d 1276, 1282 (1983); *cf. Friant v. Friant,* Del.Supr., 553 A.2d 1186, 1190–91 (1989).

█ We turn to appellant's alternate ground for reversal, that Family Court abused its discretion in not finding the facts to rebut application of the Melson Formula or in approving an award of child

support which is excessive under the circumstances and inequitable. *See Dalton v. Clanton,* 559 A.2d at 1212, quoted above. Father submits that the appropriate award for the child was the dollar equivalent of the child's primary support needs, i.e., its minimum amount needed for subsistence, through application of Part I of the Melson Formula, that is, $332 a month, representing the sum of $180 and $152. The former figure purports to represent the minimum needs of a child who is the second member of a household, and the latter figure represents a day-care expense item. However, the court below noted that the Delaware formula is out of date by five years, as noted above; and the court concluded that Part I of the Delaware formula is "no doubt low and would be increased if the formula is again reviewed and updated." To prove the point, the court compared the Delaware formula, Parts I and II, with the equivalent formulas of five other states, and it concluded that four of the five states would, under their formulas, have awarded this child substantially more than the sum of $679 that resulted from application of the Melson Formula.[2] While father asserts that the court's reference to child support formulas of other jurisdictions is irrelevant to the equities of the award in this case, we think the court was simply confirming its finding that the Delaware formula was "low" and that a primary award for the child of $332 per month, approximately $10 a day, would provide bare subsistence. Father does not take exception to the trial court's reliance upon a study of the United States Department of Health and Human Services which concluded that the cost of raising a child "in a high social economic environment" was $701.00 per month in 1986 dollars.

Father's principal argument for rebuttal of the Melson Formula as inequitable is that the sum of $679 per month "bears no relationship to the needs of the child" and that its primary needs can be met with the sum of $332. The result is, father argues, an award of "extras" of $347 for which the child has no need and which results in a "windfall" for mother in the form of "tax free alimony." Father's argument overlooks the subsistence level of the primary child support award, $6 a day for 30 days, exclusive of the child care portion. Father has also failed to define or to quantify the child's "ordinary and reasonable needs" as capable of being met through a monthly payment of $180 above child care expenses of $152. Nor has father established in the record that the sum awarded bears no reasonable relationship to the child's present and foreseeable needs. Finally, father has not established an asserted "hardship" as resulting from the award. The master found that father, after paying the required monthly child support, would have remaining approximately $3,000 per month for household expenses and other debt obligations. Family Court is vested with broad discretion in determining child support matters; and on the record before us, father has failed to meet his burden of demonstrating that application of the Melson Formula is inequitable. *Dalton v. Clanton,* 559 A.2d at 1211.

\* \* \*

Affirmed.

---

**2.** Under Part I of the Melson Formula, father's primary support obligation was determined to be $236 by multiplying $332 × 71% [the percentage results from a comparison of father's and mother's available net income, father's monthly net available for primary support being $3,191 and mother's being $1,271]. Father's re-sulting primary obligation of $236 is then subtracted from $3,191 and the difference is multiplied by 15% applicable to the first child of the household. The resulting figure, $443, is then added to father's primary support obligation of $236 to equal $679.