**DIVISION OF CHILD SUPPORT ENFORCEMENT, ex. rel., Karen HARPER, Petitioner Below, Appellant,**

v.

**James BARROWS, Respondent Below, Appellee.**

Supreme Court of Delaware.

Submitted: Dec. 19, 1989.
Decided: Feb. 21, 1990.

not require that approach.

Patricia A. Dailey, Deputy Atty. Gen., Family Court of Delaware, Wilmington, for appellant.

James Barrows, Wilmington, pro se.

Before CHRISTIE, C.J., MOORE and HOLLAND, JJ.

HOLLAND, Justice:

This is an appeal from a decision by the Family Court, in a child support action.[1] Karen Harper ("Mother"), through the petitioner-appellant, the Division of Child Support Enforcement ("DCSE"), sought support from the respondent-appellee, James Barrows ("Father"). The parties' son, Jason, was born on July 7, 1987. The Father was incarcerated on October 27, 1987, for a period of twelve years.

The Family Court held that the Father should not be excused from paying child support, despite his incarceration. The Family Court found that, although the Father's incarceration precluded him from earning income, the Father had substantial assets. Consequently, the Family Court held that any of the Father's assets that could be liquidated should be used to pay child support. Nevertheless, the Family Court concluded that imputing pre-incarceration income of $50,000 per year to the Father "would raise unrealistic expectations [in the] [M]other and place the [F]ather, heavily in debt when he is released from prison—a time when he should not be pressured." Therefore, the Family Court ordered the Father to pay child support in the nominal amount of $12.50 per week.

The Mother argues that, because the Father had assets, the Family Court erred in not imputing income to him, based upon his pre-incarceration earnings, for the purpose of calculating the level of child support. We have concluded that the Mother's contention is meritorious.

1. Pursuant to Supreme Court Rule 7(c), pseudonyms have been used instead of the actual names of the parties.

## Facts

The Father admits that Jason is his son.[2] The Father and the Mother have never been married to each other. In fact, the Father was married to Janet Barrows at the time of Jason's birth.

The Mother testified that Jason lives with her. She is employed by a delivery service, earning seven dollars per hour. The Mother testified that her monthly expenses were $450 for rent, $200 for food, $75 for clothes for Jason, $60 for electric and gas and $45 for telephone. The monthly cost of child care was represented to be $370.[3] She stated that an automobile and gasoline were provided by her employer. The Mother also testified that she had incurred post-natal expenses relating to the birth of Jason in the amount of $620.[4]

The Father testified that he was arrested for illegal drug trafficking in March, 1987, and pled guilty to various criminal charges. He was sentenced to be incarcerated for twelve years, beginning on October 27, 1987. Six years of the Father's sentence require mandatory incarceration. The Father's current earnings in prison are $16.80 per month.

Prior to his incarceration, the Father was employed at a family business. The Father's income for 1987 was approximately $52,800 per year, most of which was salary from the business. The Father also has an interest in a profit sharing plan at the family business. The Father owns a restaurant, which he opened in 1986. The Father testified that the restaurant operates at a loss.

The Father and Janet are now estranged. The Father and Janet have sold their home for $425,000. The Father testified that the net proceeds of the sale, estimated to be $30,000, were all retained by Janet. The Father also testified that his other assets are currently the subject of litigation.

## Melson Formula/Incarcerated Parent

The Family Court has adopted a uniform procedure for calculating child support obligations known as the Melson Formula.[5] That procedure, which operates as a rebuttable presumption, has been approved by this Court. *Dalton v. Clanton*, Del.Supr., 559 A.2d 1197, 1210–11 (1989). This Court has subsequently held that the Melson Formula is the appropriate standard for determining the amount of support to be provided for a child, like Jason, whose parents were never married or lived together as a family unit. *Shuba v. Division of Child Support Enf.*, Del.Supr., 564 A.2d 1084 (1989). The amount of child support to be paid, according to the Melson Formula, is calculated after determining the available income of each parent, the primary support needs of the children, and then making a standard of living adjustment.[6]

In this case, the Family Court was required to apply the principles of the Melson Formula in the context of two specific situations already contemplated by its basic terms, i.e., reduced earnings and available assets. First, with respect to earning capacity, the present procedures provide that:

> Where a support obligor is not working full time or is working below full earning capacity, the court will examine the reasons for such a limitation on earnings. If the reason is a matter of choice by the obligor or is due to factors other than care required by the children to whom the parties have a joint legal responsibility for support, the Court may then con-

---

**2.** During initial proceedings, which were contested, a blood test showed a 99.82% probability of the Father's paternity of Jason.

**3.** The Mother testified that at present, Jason went to work with her, but that she was waiting for an opening in a day-care center.

**4.** The Family Court has the authority to require the Father to pay this expense. 13 *Del.C.* § 504.

**5.** The Melson Formula is named after its judicial craftsman, Judge Elwood F. Melson, Jr., of the Family Court. The formula was a judicial response to 13 *Del.C.* § 514 which required the Family Court to consider the economic conditions of the parties involved, their standard of living and the overall equities of the situation. For a discussion of the Melson Formula, *see Dalton v. Clanton*, Del.Supr., 559 A.2d 1197, 1202–09 (1989).

**6.** The complete analysis which is required by the Melson Formula is set forth in the appendices to *Dalton v. Clanton*, 559 A.2d at 1212–1218.

sider evidence establishing the obligor's earning capacity in the local job market. *Dalton v. Clanton*, 559 A.2d at 1213. Second, the existing procedures recognize that "[w]here a support obligor has inadequate income to meet his support obligation but owns assets, he will be required to convert all or some portion of said assets to cash for payment of support." *Id.*

■ In accordance with its procedures, the Family Court examined the reason for the reduction in the Father's earnings. The Family Court found that the source of the limitation on the Father's actual earnings was his incarceration. The Family Court held that incarceration is a foreseeable result of criminal activity and does not *ipso facto* relieve one of the obligation to pay child support.[7] We affirm that ruling. The majority of the cases decided in other jurisdictions have reached the same conclusion. *See, e.g., Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615, 618 (1985); *Noddin v. Noddin*, 123 N.H. 73, 455 A.2d 1051, 1053 (1983); *Proctor v. Proctor*, 773 P.2d 1389, 1391 (Utah Ct.App.1989). *But see Leasure v. Leasure*, 378 Pa.Super. 613, 549 A.2d 225, 227 (Ct.1988).

■ The Family Court's procedures also require a support obligor, who has inadequate income to meet his support obligation, to convert all or some portion of his assets into cash. *Dalton v. Clanton*, 559 A.2d at 1213. The Family Court found that the Father had substantial assets. In accordance with its procedures, the Family Court held that the Father's assets should be liquidated to discharge his support obligation. We affirm that ruling. We have found no jurisdiction which currently suspends or discharges child support obligations if an affirmative showing has been made that an incarcerated support obligor has available assets.[8]

Thus far, the analysis of the Family Court was in accordance with the procedures set forth in the Melson Formula. The final step in those procedures required the Family Court to set the amount of child support which the Father should pay. Those procedures provided that, since the reduction in the Father's earning capacity was attributable to his own conduct, income *could* be imputed to him. *Dalton v. Clanton*, 559 A.2d at 1213. Nevertheless, the Family Court declined to impute income to the Father and held:

This Court agrees that an inmate should not be able to avoid his [or her] child support obligation while incarcerated. Yet, any support order entered against a prisoner must be tempered by an expectation of collectability. In the instant case, an order based upon an

---

7. *Compare R.T. v. R.T.*, Del.Supr., 494 A.2d 150 (1985) (reduction in earning capacity recognized when the obligor was terminated from his higher-paying job, unable to find suitable employment and forced to open a small, unsuccessful restaurant business.)

8. *See Clemans v. Collins*, 679 P.2d 1041, 1042 (Alaska 1984) (court remanded to decide if incarcerated, obligated parent has available assets to meet child support payments); *In re Marriage of Vetternack*, 334 N.W.2d 761, 763 (Iowa 1983) (equity in home reduced to pay support obligation); *Noddin v. Noddin*, 455 A.2d at 1053 (child support should not be reduced "where his own conduct has resulted in his loss of high-earning employment and he has at least one valuable asset"); *Pierce v. Pierce*, 162 Mich.App. 367, 412 N.W.2d 291, 293 (1987) (assets may be applied to meet child support obligation during incarceration); *Foster v. Foster*, 99 A.D.2d 284, 471 N.Y.S.2d 867, 869 (1984) (incarcerated parent not liable for child support unless it is affirmatively shown that assets are available, but that it would be inequitable to force the wife/mother to sell the home to meet the fa-

ther's obligation); *Edmonds and Edmonds*, 53 Or.App. 539, 633 P.2d 4, 5 (1981) (no liability without affirmative showing of assets); *Leasure v. Leasure*, 549 A.2d at 227 (no obligation for incarcerated parent to pay child support "unless that parent possesses another asset from which funds could be generated."). Two jurisdictions have continued a prior support obligation even when no assets are available. *See Ohler v. Ohler*, 369 N.W.2d at 618 (incarcerated parent comes to equitable divorce and support hearing with "unclean hands") *and Noddin v. Noddin*, 455 A.2d at 1053 (support modification denied to incarcerated parent who "comes to the court with unclean hands"). All jurisdictions agree that if the obligor entered prison for non-payment of child support or to deliberately avoid the support obligation, no reduction or discharge will be permitted and the arrearages will simply increase regardless of whether assets are available. *See, e.g., Foster v. Foster*, 471 N.Y. S.2d at 869; *Edmonds and Edmonds*, 633 P.2d at 6; *Leasure v. Leasure*, 549 A.2d at 227.

attributed income of $50,000.00 per year would raise unrealistic expectations of mother and place the father heavily in debt when he is released from prison—a time when he should not be pressured. I am satisfied ... that an order of $12.50 per week is reasonable.

A similar rationale has been used in other states to suspend or to discharge a child support obligation, when the support obligor is incarcerated. *See, e.g., Nab v. Nab*, 114 Idaho 512, 757 P.2d 1231, 1238 (Ct.App. 1988) (imposing child support obligation above parent's ability to pay does not help the child but only adds to financial burden at time when obligor is least able to bear it—upon release from prison); *Leasure v. Leasure*, 549 A.2d at 227 (child support does not help child but "adds to an accumulating burden which falls upon the parent when he is least able to bear it"); *Pierce v. Pierce*, 412 N.W.2d at 293 (heavy load on released parent not in best interests of the child). However, these cases do not support the Family Court's decision. Each of these cases recognized that a different conclusion might have been reached if there were assets available to the incarcerated parent. *Id.* In fact, in several of these cases, the appellate court remanded the matter to the trial court for the express purpose of determining whether the incarcerated obligor had assets available with which to satisfy a support order. *Id.*

### Deviation From Melson Formula

■ In this appeal, we are called upon to review the Family Court's decision to deviate from the procedures of the Melson Formula. Since a proper application of the Melson Formula requires more than the mechanical use of an algebraic equation, our standard of review is to examine the record for an abuse of discretion. *Dalton v. Clanton*, 559 A.2d at 1201–02, 1212. The Melson Formula operates as a rebuttable presumption in all child support cases in Delaware. *Id.* at 1210–11. "As a rebuttable presumption, the Delaware procedure provides for a uniform approach to child

support decisions, unless the Family Court is persuaded that an application of the Melson Formula would be inequitable." *Id.* at 1211. In *Dalton*, we held:

The mathematical result which is the product of the Melson Formula can never be the basis of a child support order under the Delaware procedure, until that result passes the litmus test of the rebuttable presumption. When the calculation according to the Melson Formula is mixed together with the specific facts in a case, the result must be equitable. If the result is inequitable, the presumption is rebutted, and the support calculation pursuant to the Melson Formula must yield to the extent that is necessary to balance the equities in the case.

*Id.* at 1212.

In this case, the Family Court deviated from the Melson Formula because it concluded that imputing income to the Father would be unfair to the Father. The Family Court's concern for the Father's circumstances following his release from prison was misplaced, given the facts of this case. The more appropriate concern is the welfare of Jason during the Father's incarceration. The conclusion reached by the Family Court is unfair to Jason since his Father, despite his incarceration, has the ability to pay child support by liquidating assets. A proper balancing of the equities in this record compels adherence to the Melson Formula.

■ In the event that a parent becomes incarcerated, children continue to need support. It would be inequitable to have the support obligation discharged by one parent, or society, while the incarcerated parent retains available assets. If the Father in this case is not required to liquidate his assets and make a substantial contribution to his child's support, it would result in a situation where the Father would conclude his incarceration with accumulated assets while Jason was either denied support or supported by others during the same period of time.[9]

---

**9.** *Conversely,* in the absence of a substantial award for child support, the Father's assets may

be seized by other creditors, with claims that are inferior to Jason's.

[redacted] This Court has held that the obligation to support children is a parent's first priority. *R.T. v. R.T.*, Del.Supr., 494 A.2d 150, 153 (1985). *See* 13 *Del.C.* § 505.[10] That paramount obligation limits a parent's ability to retain assets. *R.T. v. R.T.*, 494 A.2d at 153. The Family Court should not have used its equitable powers to protect the Father's assets, while he was incarcerated, by entering an order to pay child support in only a nominal amount. *See Proctor v. Proctor*, 773 P.2d 1389, 1390–91 (Utah Ct.App.1989). We hold that the presumptive applicability of the Melson Formula is not rebutted by demonstrating a reduction in earning capacity, which is attributable to incarceration, if there are assets available to the incarcerated support obligor.

The Family Court should have followed the Melson Formula by imputing an income to the Father, which was commensurate with his pre-incarceration earning capacity. The Family Court should have ordered the Father to pay child support in a significant amount. Thereafter, the Family Court should have required the Father to liquidate his assets or permitted their liquidation by judicial process to satisfy the terms of its child support award. Once his assets have been completely expended, the Father may decide to petition the Family Court for a reduction in the amount of child support he must pay.[11] However, at least until the Father's assets are depleted, a judgment for child support should accrue for the benefit of Jason and those who are discharging the Father's responsibility to contribute to Jason's support.

*Conclusion*

The decision of the Family Court, concerning the amount of child support owed by the Father, is REVERSED. The case is REMANDED for further proceedings consistent with this opinion.

[redacted]

10. The record reflects that the Father permitted his spouse, Janet, to retain his share of the net proceeds realized from the sale of the marital home. However, the priorities among dependents, established by the General Assembly, place the Father's obligation to support Jason ahead of his obligation to Janet. 13 *Del.C.* § 505(a)(1), (2).

11. The Father bears the burden of demonstrating a change in circumstances which would justify the modification. *Shuba v. Division of Child Support Enf.*, 564 A.2d at 1088; *Dalton v. Clanton*, 559 A.2d at 211.