**Andrew J. SENTNER, Respondent Below, Appellant,**

v.

**Vicki L. SENTNER, Petitioner Below, Appellee.**

**No. 531, 2001.**

Supreme Court of Delaware.

Submitted: Feb. 26, 2002.
Decided: May 31, 2002.

Michael F. Tucker, Esquire, Wilmington, Delaware, for appellant.

Carolyn M. McNeice, Esquire, Wilmington, Delaware, for the appellee.

Before WALSH, HOLLAND, and STEELE, Justices.

HOLLAND, Justice.

This is an appeal from a decision by the Family Court in a child support action. The respondent-appellant, Andrew J. Sentner (the "Father"), sought modification on August 8, 2000 of a 1997 support order. That order required him to pay $607.00 per month in child support for his daughter, Dawn A. Sentner ("Dawn"). A Family Court commissioner granted the Father's request for modification since his current employment provided less than half the income he had earned at the time the 1997 support order was entered against him.

In reviewing the commissioner's decision *de novo*, a Family Court judge denied the petition for modification, even though the Father earned substantially less income from the loss of his employment and had conducted a vigorous job search. The Family Court judge held that the Father's request for modification should be rejected since a "sufficient period of time" had not elapsed under the Delaware Child Support Formula ("Melson Formula").[1] Thus, the Family Court judge reinstated the 1997 support order and made a finding of arrears.

In this appeal, the Father argues that the Family Court abused its discretion by failing to acknowledge the adequacy of the Father's job search in applying the "sufficient period of time" requirement of the Melson Formula.[2] We conclude that the Father's contention is meritorious. Ac-

---

1. Report of the Family Court Judiciary, *The Family Court of the State of Delaware: Delaware Child Support Formula Evaluation and Update*, at 5 (Oct. 1, 1998).

2. *Id.*

cordingly, the judgment of the Family Court is reversed.

### Facts

The parties' daughter, Dawn, was born on August 30, 1991. Following her birth, the parties separated and were divorced. Dawn lives with Vicki L. Sentner (the "Mother") by stipulation of the parties. On September 8, 1997, the Family Court entered a support order directing the Father to pay $607.00 per month in child support.

When the support order was entered, the Father worked for Keene Compressed Gas ("Keene"). He sold industrial gases and welding equipment. Keene terminated his employment on May 24, 1999 for falsifying reports and a customer complaint that he smelled of alcohol. He had worked at Keene for over eighteen years and earned approximately $50,000 a year. Consequently, the Father's sole income for the remainder of the year consisted of unemployment compensation.

In August 1999, the Father filed a Petition to Modify Child Support. He sought to modify the 1997 support order because he was earning significantly less income. Since less than two and a half years had elapsed, the Melson Formula required that the Father show that there was a substantial change in circumstances that was not due to his own fault.[3] Following a hearing, a commissioner ruled that the Father had failed to carry that burden. Accordingly, the commissioner dismissed the Father's petition.

In January 2000, the Father began working for E.E. Rosser, Inc. He sold gases, industrial gases and welding supplies. He earned approximately $19,000 per year.

### Commissioner's Order

On August 8, 2000, the Father filed another petition to modify the 1997 support order. The Mother opposed the petition. The case was scheduled before a commissioner.

On February 8, 2001, the commissioner held a hearing on the issues of modification and arrears.[4] The commissioner stated that in applying the Melson Formula that the Father no longer had to prove that he lost his employment through no fault of his own since a period of more than two and a half years had passed since the 1997 order was entered—when the current amount of child support was set.[5] According to the commissioner, under the Melson Formula "standards for modification," the "[Father rather] merely ha[d] to prove that he ha[d] made substantial efforts to find comparable employment."[6]

At the hearing before the commissioner, the Father testified that after he began employment with E.E. Rosser, Inc. he had been looking for a job that paid more money, but that he had not been successful in finding one. He offered to submit copies of want ads from his job search. He also testified that he had submitted several resumes and had interviews.

Dianne Buckley ("Buckley"), a senior vocational rehabilitation consultant, testified

---

**3.** Report of the Family Court Judiciary, *The Family Court of the State of Delaware: Delaware Child Support Formula Evaluation and Update,* at 9–10 (Oct. 1, 1998).

**4.** Mother filed a Petition for Child Support Arrears on September 27, 2000. The Family Court granted her request to consolidate the

question of arrears with the hearing on the modification petition.

**5.** Report of the Family Court Judiciary, *The Family Court of the State of Delaware: Delaware Child Support Formula Evaluation and Update,* at 9–10 (Oct. 1, 1998).

**6.** Hr'g Tr., Feb. 8, 2001, at 26.

that the Father sought her assistance in obtaining a better job. She testified she had compiled a report of over one hundred positions for sales representatives at the time. Buckley, however, stated that the Father was not qualified for or would not have been suitable for such positions. She testified that it would take the Father time to work up to the same earning potential that he had acquired due to his tenure at Keene. Buckley encouraged the Father to stay at his current position in a similar sales field. She believed that it would be easier for him to get a job if he already had one.

After finding that the Father had made an adequate job search, the commissioner entered an order modifying the Father's child support and arrears. The commissioner used the Father's current income in calculating the Father's support obligation pursuant to the Melson Formula. The commissioner modified the Father's child support payments to $194.00 per month and assessed arrearages of $5,354.24 as of January 19, 2001. The Mother filed an appeal *de novo*.

### Review De Novo by Family Court

After conducting a *de novo* review of the record, a Family Court judge entered an order on May 11, 2001. The trial judge rejected the commissioner's order modifying the Father's child support and arrears. On May 16, 2001, the Father filed a motion to vacate this order and reopen the case.

The Father had not received a copy of the Mother's appeal prior to the issuance of the Family Court's May 11, 2001 Order. The Family Court granted the Father's motion and permitted him to respond to the Mother's initial appeal. On September 26, 2001, the Family Court entered a new order reinstating the May 11, 2001 Order as the final order of the Family Court.

### Melson Formula

The Family Court adopted the Melson Formula to operate as a uniform procedure for calculating child support obligations.[7] That procedure, which has been upheld by this Court, operates as a rebuttable presumption in all child support cases in Delaware.[8] The appropriate child support obligation is determined, in part, upon the respective net income of the parties.[9] Under the Melson Formula, the amount of child support to be paid is calculated after determining the monthly net income of each parent, the primary support needs of the children and then making a standard of living adjustment.[10]

A proper application of the Melson Formula requires more than the mechanical use of an algebraic equation.[11] This Court's standard of review is to examine the record for an abuse of discretion.[12] We will not disturb findings of fact unless they are clearly wrong. The Court will affirm the inferences and deductions of the trial judge if they are supported by the

7. *Div. of Child Support Enforcement ex rel. Harper v. Barrows*, 570 A.2d 1180, 1182 (Del. 1990); *see generally Smith v. Francisco*, 737 A.2d 1000, 1001–03 (Del.1999); *Dalton v. Clanton*, 559 A.2d 1197, 1202–09 (Del.1989).

8. *Div. of Child Support Enforcement ex rel. Harper v. Barrows*, 570 A.2d at 1182 (citing *Dalton v. Clanton*, 559 A.2d at 1210–11); *accord Turner v. Turner*, 586 A.2d 1182, 1185 (Del.1991).

9. *Turner v. Turner*, 586 A.2d at 1184.

10. Fam. Ct. Civ. R. 52(c); Form 509 (Child Support Calculation); Form 509 I (Instructions for Child Support Calculation); *see also Div. of Child Support Enforcement ex rel. Harper v. Barrows*, 570 A.2d at 1182 (citing *Dalton v. Clanton*, 559 A.2d at 1212–18).

11. *Div. of Child Support Enforcement ex rel. Harper v. Barrows*, 570 A.2d at 1182.

12. *Id.*

record and are the product of an orderly and logical deductive process.[13]

### Modification Generally— Time Constraints

In the absence of a substantial change in an obligor's circumstances, the Melson Formula includes a general prohibition against filing any petition for modification within two and a half years of the last order setting the current amount of child support:

> No petition may be filed within 2½ years of the date of the last order regarding current support absent pleading with particularity a substantial change in circumstances—specifically changes in income brought on by no fault of the petitioner, changes in day care expenses, or changes in other child support obligations of the obligor.[14]

The change in circumstances exception to the general prohibition is subject to an important qualification: that any substantial "changes in income [be] brought on by no fault of the petitioner." Accordingly, if an obligor cannot demonstrate that "no fault" qualification to the alleged change in circumstances, the last order setting the current amount of child support will remain in effect for two and a half years, notwithstanding a substantial reduction in the petitioning obligor's income.

After the passage of two and a half years, the Melson Formula permits modification as follows:

> The passage of 2½ years since the last order regarding current support shall constitute sufficient basis to file a petition for modification of the current support order. These petitions shall result in a modification of the support order based strictly on the calculation amount, with no need for a 10% threshold to be met.[15]

The fact that a petition for modification can be filed after the passage of two and a half years does not make the petitioner's fault in causing a reduction of income irrelevant. It also does not obviate the consideration of other time constraints. When a petition for reduction is filed more than two and a half years after the entry of the current order, the merits must be considered in accordance with the attribution of income standards in the Melson Formula.

### Attribution of Income Standards

In calculating the monthly net income of each parent, the Melson Formula permits the use of "attributed income." Income is attributed where a parent is able to work and unemployed or underemployed,[16] non-appearing or unprepared,[17] or voluntary separated from or lost employment due to his or her own fault.[18] Where a parent has voluntarily separated from or lost employment due to his or her

**13.** *Solis v. Tea,* 468 A.2d 1276, 1279 (Del. 1983); *accord Dalton v. Clanton,* 559 A.2d at 1201–02.

**14.** Report of the Family Court Judiciary, *The Family Court of the State of Delaware: Delaware Child Support Formula Evaluation and Update,* at 9 (Oct. 1, 1998).

**15.** *Id.* at 10.

**16.** Report of the Family Court Judiciary, *The Family Court of the State of Delaware: Dela-*

*ware Child Support Formula Evaluation and Update,* at 4 (Oct. 1, 1998); Form 509 I (Instructions for Child Support Calculation).

**17.** *Id.* at 5.

**18.** Report of the Family Court Judiciary, *The Family Court of the State of Delaware: Delaware Child Support Formula Evaluation and Update,* at 5 (Oct. 1, 1998).

own fault, the Melson Formula attributes income as follows:

> A parent who has voluntarily separated from or lost employment due to his/her own fault will be attributed with earnings from that employment and will not be entitled to a reduction in his/her income in the formula. Any reduction in attributed income will be permitted only after a *sufficient period of time* has elapsed in which the obligor can demonstrate that he/she has been actively seeking employment commensurate with his/her current skills, education, and training; and in the Court's discretion, other factors surrounding the loss of employment justify such a reduction.[19]

■ Pursuant to this attribution of income standard, the Family Court applies the Melson Formula to either continue to attribute income to an obligor or to permit a reduction in attributed income. The Melson Formula presumes that the Family Court will attribute income to an "at fault" obligor unless the "sufficient period of time" requirement is satisfied. Such a presumption places the burden on the obligor to demonstrate that the "sufficient period of time" requirement has been met in order to permit a reduction.

If an obligor seeks comparable employment, however, the Melson Formula recognizes the obligor's subsequent efforts by potentially permitting a reduction in attributed income. This procedure permits the Family Court to assess the obligor's ability to maintain current child support when the obligor is experiencing diminished income from the loss of employment or from employment that does not produce a similar earning capacity. Where a parent attempts to take responsibility for his or her conduct, the procedure attempts to promote an equitable result.

■ When the Family Court attributes income, such income is based upon the obligor's earning capacity.[20] If no earnings history exists, then the Family Court looks to the earning capacity of one with comparable qualifications in the local job market.[21] When an obligor's income cannot sufficiently be established, the Family Court may use wage and earnings surveys distributed by government agencies.[22]

### Melson Formula Standards in Pari Materia

■ The commissioner concluded that the reasons for the Father's loss of employment were irrelevant since more than two and a half years had passed since the current support order was entered. That conclusion misinterpreted the Melson Formula by failing to construe the general standards for modification *in pari materia* with the standards for attribution of income. After two and a half years, an "at fault" child support obligor can file a petition pursuant to the general "standards for modification," but is still required to comply with the attribution of income standard by demonstrating a "sufficient period of time" has passed since the loss of employment and that he or she has conducted an adequate job search. For example, if an obligor lost his or her job two years and five months after the current child support order was entered, it would be difficult for the obligor to demonstrate either sufficiency of time or the adequacy of a job search, even though the obligor could file a petition for modification the next month.

---

19. *Id.* at 5 (emphasis added).

20. Form 509 I (Instructions for Child Support Calculation).

21. *Id.;* Report of the Family Court Judiciary, *The Family Court of the State of Delaware: Delaware Child Support Formula Evaluation and Update,* at 5 (Oct. 1, 1998).

22. *Id.*

The fact that the Father lost his employment through his own fault is *res judicata*.[23] Therefore, even though more than two and a half years had passed since the current child support order was entered, the trial judge correctly recognized that the reasons for the Father's loss of employment remained relevant. After the passage of two and a half years, although a petition could properly be filed, proper application of the Melson Formula would only permit a modification of the Father's child support obligations if the attribution of income standard permitted such a reduction. Pursuant to that standard in the Melson Formula, a reduction was permissible only if: a sufficient period of time had elapsed in which the Father conducted an adequate job search; and in the Family Court's *discretion*, other factors surrounding the Father's loss of employment justified such a reduction.

### Attributed Income Reduction

Whenever the Family Court applies the Melson Formula, the goal is to produce a fair and equitable result for all parties involved in the child support calculation.[24] In the event that a parent's misconduct results in a loss of employment, it would be inequitable for a child's support to be reduced *ipso facto*. An obligation to support children remains a parent's first priority.[25] Thus, a parent is attributed with income from his or her prior employment until such parent can make a good faith demonstration to the Family Court that a "sufficient period of time" has elapsed in which comparable employment was sought.[26] Moreover, this Court has held that incarcerated "at fault" child support obligors, who obviously cannot make a job search, may be required to liquidate assets to discharge their child support responsibilities.[27]

The "sufficient period of time" requirement in the attribution of income standard requires the Family Court to consider several variables. The Family Court must *primarily* weigh both the passage of time and the obligor's efforts to obtain comparable employment. The Family Court then, in its discretion, may consider whether "other factors" surrounding the obligor's loss of employment justify a reduction.

The Family Court must determine initially whether an obligor can "demonstrate that he/she has been actively seeking employment commensurate with his/her current skills, education, and training."[28] Otherwise, the obligor may be

---

**23.** The Family Court entered an order on November 9, 1999 dismissing Father's Petition for Modification of Child Support. The commissioner found that Father did not show a substantial change of circumstances, except for a loss of employment brought about by his own doing. Father did not appeal this decision.

**24.** *Dalton v. Clanton*, 559 A.2d 1197, 1212 (Del.1989).

**25.** *Div. of Child Support Enforcement ex rel. Harper v. Barrows*, 570 A.2d 1180, 1185 (Del. 1990) (citing *R.T. v. R.T.*, 494 A.2d 150, 153 (Del.1985)). Fundamental to the Melson Formula is the concept that both parents are responsible for the support of their children.

Report of the Family Court Judiciary, *The Family Court of the State of Delaware: Delaware Child Support Formula Evaluation and Update*, at 4 (Oct. 1, 1998).

**26.** *See R.T. v. R.T.*, 494 A.2d at 153 (considering whether parent's termination of employment and efforts to rearrange his finances were an attempt to avoid child support obligations).

**27.** *Div. of Child Support Enforcement ex rel. Harper v. Barrows*, 570 A.2d at 1185.

**28.** Report of the Family Court Judiciary, *The Family Court of the State of Delaware: Delaware Child Support Formula Evaluation and Update*, at 5 (Oct. 1, 1998).

considered working below his or her level and be attributed with income at the obligor's higher earning capacity.[29] This Court has previously acknowledged that an obligor can demonstrate an active good faith effort to seek employment by making a "reasonable and continuing" attempt to secure employment.[30]

An obligor's efforts to seek commensurate employment must be sustained over a sufficient period of time, however, to demonstrate a parent's initiative and diligence toward wanting to use his or her full earning capacity to fulfill current support obligations.[31] Although an obligor may not be able to achieve the same level of compensation as his or her prior employment, an obligor is expected to seek employment that will produce the highest level of income available. Such employment may not be in the same or a similar field due to current economic factors or other limitations.

### This Case

In applying the "sufficient period of time" requirement, the Family Court judge framed the issue as "not whether [the] Father made an adequate job search," but "whether a sufficient period of time ha[d] elapsed for said search."[32] The trial judge determined that the Father lost his employment two years prior to the hearing for reasons under his control. The trial judge acknowledged that the Father had undertaken a vigorous job search after losing his employment. Nevertheless, the trial judge held that the Father's active and sustained search did not satisfy the "sufficient period of time" requirement under the attribution of income standard of the Melson Formula.

Accordingly, the record reflects that although the trial judge acknowledged the Father's active and sustained job search, it was not accorded any weight. Instead, the trial judge only focused on the passage of time. We hold that the Family Court committed reversible error by not properly weighing the adequacy of the Father's job search in applying the "sufficient period of time" requirement of the Melson Formula, when the Father had conducted an active job search over a substantial amount of time.

The Family Court judge also has the discretion to consider whether "other factors surrounding the [Father's] loss of employment justify ... a reduction" in the context of considering the adequacy of the job search. This called for a balanced analysis. The trial judge noted that the Father's loss of employment was a result of his alcohol usage and falsification of "call" reports. The trial judge did not, however, discuss the ramifications of those and "other factors" in deciding to deny the Father's petition for a reduction.

The Father's substance abuse and falsification of reports are two independent circumstances that made the Father less desirable as an employee. Accordingly, those factors can be considered in examining the lower rate of compensation achieved by the Father after he demon-

**29.** *Id.* at 4. If an obligor is working below full earning capacity, a court will examine the reasons for such a limitation on earnings. *Div. of Child Support Enforcement ex rel. Harper v. Barrows,* 570 A.2d at 1182.

**30.** *R.T. v. R.T.,* 494 A.2d at 151; *see also In re Joslin,* 1999 WL 1457216, at *2 (Del.Fam.) (considering the number of applications a parent submitted over a period of time as to

whether the parent actively sought comparable employment).

**31.** *See Foster v. Foster,* 537 S.W.2d 833, 835–36 (Mo.Ct.App.1976); *accord In re Marriage of Foley,* 501 N.W.2d 497, 500 (Iowa 1993).

**32.** *V.L.S. v. A.J.S.,* Del.Fam., No. CN88–7199, 2001 WL 1669288 at *2 (May 11, 2001).

strated a diligent and sustained job search over a "sufficient period of time." Similarly, the fact that the Father's prior earning capacity reflected approximately two decades of seniority could be considered when the Father was searching for a lateral placement, but could only find an entry level position.

 In exercising its discretion, although the Family Court alluded to the reasons for the Father's loss of employment, it did not address those "other factors" in the context of considering the adequacy of the Father's job search. The fact that the Father lost his employment through his own fault was the reason that income was initially attributed to him. After a sufficient period of time has passed with an active job search, however, the actual employment prospects of an obligor should be considered objectively in deciding whether "other factors" surrounding the obligor's loss of employment justify a reduction.

The record reflects that the Father sustained his burden of demonstrating that a "sufficient period of time" had elapsed in which he had conducted an adequate job search. The record also demonstrates that the "other factors" surrounding the Father's loss of employment justified a reduction. Those factors are the circumstances that make the Father less desirable to prospective employers and the Father's loss of seniority. Accordingly, the Family Court should have granted the Father's petition for modification, in accordance with the calculations of the commissioner.

### Conclusion

The judgment of the Family Court is reversed. This matter is remanded for further proceedings in accordance with this Opinion.