**PATRICIA M. D., Respondent Below, Appellant,**

v.

**ALEXIS, I. D., Petitioner Below, Appellee.**

Supreme Court of Delaware.

Submitted Sept. 17, 1981.

Decided March 11, 1982.

Ben T. Castle (argued), of Young, Conaway, Stargatt & Taylor, Wilmington, for respondent below, appellant.

Frederick T. Haase, Jr. (argued), of Roeberg & Associates, P.A., Wilmington, for petitioner below, appellee.

Before HERRMANN, C. J., DUFFY and HORSEY, JJ.

HERRMANN, Chief Justice:

This appeal requires review of a Superior Court order reversing a Family Court grant of retroactive child support.[1] The Superior Court held (1) child support may be ordered only from the date the petition for support is filed; (2) prior to that date the parents are only liable for reimbursement of actual expenses; and (3) the Family Court abused its discretion by arriving at "the amount of past support by simply applying the amount determined to be appropriate at the present ... without regard to the circumstances throughout that period...." *A. I. D. v. P. M. D.*, Del.Super., No. 79A–JA–14 at 2–3 (November 3, 1980).

I.

The basic facts relevant here are the following:

The parties were married in 1966, and lived in Paris and London until their separation in 1973. One child, a daughter, was born to the couple in 1967.

The income the parties received during the marriage was mainly from a large trust established for the Husband by his family. Since that income was in excess of $100,000 annually, the parties enjoyed a fine life style complete with household servants and a governess for the children. After separating, the Husband left the Wife with the care of the daughter without significant means of support, although he continued to receive the substantial annual trust income as theretofore. As a result, the Wife and daughter were forced to reduce their standard of living to a fraction of that which they had enjoyed previously.

Although the Husband continued the life style to which he had previously become accustomed out of the trust income, the Wife came under the constant dunning of creditors, and was ultimately obliged to seek public assistance for the support of herself and the child.

In 1977, the Wife petitioned the Family Court for past, present, and future child support, seeking to have an award made retroactive to the date of separation in 1973. The Family Court entered an order in 1978, directing the Husband to pay $2,200 per month for the support of the daughter, to continue until she reached "the age of 18 years or is emancipated or dies." Further, the Family Court held that the Husband owed child support retroactive to 1973 when he separated from his Wife.

The Superior Court, in reversing the Family Court, found no statutory authority for a retroactive award of child support, and found no "need for an order providing for the child's support in the past." Rather, the Superior Court concluded that the scope of a retroactive support order must be limited to payment of accumulated bills and reimbursement of actual expenditures made

1. As to jurisdiction to hear appeals from Family Court in child support cases, see *G. S. G. v. P. S. G.*, Del.Supr., 412 A.2d 319, 325 (1980).

For other pertinent facts, see prior opinion of this Court deciding property division issues in this case, *A. I. D. v. P. M. D.*, Del.Supr., 408 A.2d 940 (1979).

by the custodial parent or some third party. *Stat v. Porter,* Del.Supr., 314 A.2d 172 (1973); *Wilderman v. Wilderman,* Del.Super., 330 A.2d 149 (1974); *Toy v. Cherico,* Del.Super., 367 A.2d 651 (1976).

## II.

### A.

■ We disagree with the Superior Court's view of the Support Statute in this case. Since the Statute neither expressly prohibits nor permits an award of retroactive support, there is ambiguity requiring statutory construction. We think it clear from the whole Statute that the General Assembly intended that the Statute be given broad interpretation,[2] *Wife S. v. Husband S.,* Del.Ch., 295 A.2d 768 (1972). We conclude under such construction that retroactive support awards are *per se* permissible.[3]

■ The Family Court has "inherent equitable powers relating to support." *Mark T. v. Judith T.,* Del.Supr., 430 A.2d 792, 793 (1981). Indeed, as § 507 makes clear, the Family Court is vested with all "powers relating to support and separate maintenance actions heretofore possessed by the Chancellor or the Court of Chancery of the State." See *Wife S. v. Husband S., supra;*

2. In general terms, exclusive jurisdiction to award support is conferred upon the Family Court by 13 *Del.C.* § 507 which provides:
"§ 507. Jurisdiction in Family Court; termination of chancery jurisdiction.
"(a) The Family Court of the State shall have exclusive original jurisdiction over all actions arising under this chapter. The Court shall have exclusive jurisdiction with respect to construction and enforcement of agreements relating to payments for support between spouses, between persons formerly spouses, between parents and children and between parents and children's spouses or former spouses. The Court shall have and exercise all other jurisdiction and powers relating to support and separate maintenance actions heretofore possessed by the Chancellor or the Court of Chancery of the State.
"(b) The jurisdiction of the Court of Chancery in civil actions for separate maintenance is hereby terminated, except for such actions for separate maintenance as have been commenced in the Court of Chancery prior to the effective date hereof. The Court of Chancery shall retain exclusive jurisdiction over such latter actions."

3. For the breadth of support orders contemplated by our Statute, see 13 *Del.C.* § 513 which provides:
"§ 513. Judgment; order of support; other terms.
"Where the duty of support has been determined to exist, the Court may:
"(1) Order the defendant to pay a certain sum periodically into the Court or directly to a dependent, his guardian, custodian, or trustee, for his support for so long as the obligation of support shall exist;
"(2) Order the defendant to pay a specific total amount into the Court or directly to a dependent, his guardian, custodian or trustee, in a lump sum or in such stated periodic amounts as the Court deems proper;

"(3) Order the defendant to pay directly to the obligee the cost of prenatal and postnatal medical, hospital, and other lying-in expenses incident to the birth of a child;
"(4) Order the defendant to pay the expenses of litigation including reasonable counsel fees incurred by a petitioner;
"(5) Enforce its order by attachment of the defendant or by sequestration of property;
"(6) Enter such other orders as the Court of Chancery heretofore possessed the power to enter, and as the interests of the parties may require, including but not limited to orders of custody and visitation;
"(7) Order the defendant to move from the family home, even though titled in defendant's name alone or jointly with someone else, and not to live there for a reasonable period of time so that his or her spouse and/or child or children of the marriage might live there and enjoy the family home as an element of support;
"(8) Enjoin the defendant from molesting or disturbing the peace of his or her spouse and/or child or children of the marriage for whom defendant is obliged to provide support;
"(9) Restrain defendant from transferring, encumbering, concealing or in any way disposing of any property except in the usual course of business or for the necessities of life, and, if so restrained, requiring him or her to notify any person to whom he or she has an obligation of support, or such person's guardian, custodian or trustee, of any proposed extraordinary expenditure and to account to the Court for all extraordinary expenditures made after the order is issued;
"(10) Order the defendant to permit his or her spouse and/or child or children of the marriage to have the use of designated personal property and/or fixtures, even though titled in defendant's name alone or jointly with someone else, upon such terms and conditions as the Court may impose, as an element of support."

*C. v. A.*, Del.Supr., 379 A.2d 1119 (1977). Likewise, 13 *Del.C.* § 513(6) provides that the Family Court may "[e]nter such other orders as the Court of Chancery heretofore possessed the power to enter, and as the interests of the parties may require, . . . ." The several references to powers "heretofore possessed" by the Court of Chancery, manifests a legislative intent that the broad scope of authority historically existing in equity be continued and be vested in the Family Court in child support cases.

Accordingly, it is appropriate to apply basic equitable principles to determine the issue here presented. In so doing, we note particularly that under 13 *Del.C.* § 501(a),[4] there is a mandatory duty upon a father to support his dependent child; that under 13 *Del.C.* § 505(a)(1), that duty is given the highest priority established by the Support Statute; that the duty is imposed whether or not it is enforced; and that, therefore, a child's right to support is not dependent upon whether an adult sues on the child's behalf.

To deny the right to retroactive support, under basic equitable principles and such statutory rights and duties, would be to leave a right without a remedy, a result "which equity abhors." *Mark T. v. Judith T.*, 430 A.2d at 793. See also *DuPont v. DuPont*, Del.Ch., 32 Del.Ch. 56, 79 A.2d 680 (1951), aff'd., Del.Supr., 32 Del.Ch. 413, 85 A.2d 724 (1951).

The Husband cites *DeFeo v. DeFeo*, Del. Fam.Ct., 428 A.2d 26 (1981) as authority for his position that support is to be determined only from the date the petition or motion for relief was filed. *DeFeo* is inapposite; it dealt with an application for modification of a support order entered in New Jersey with Delaware's jurisdiction invoked under the Uniform Reciprocal Enforcement of Support Act. 13 *Del.C.* §§ 601–639. To permit a retroactive modification in that case would have been an improper infringement upon the jurisdiction of a sister state.

### B.

The time period for which retroactive support can be granted is not, however, without limit. We hold that the limitation is provided by analogy to the companion criminal Statute in child non-support matters.

Failure of a parent to provide support for a necessitous child is a criminal offense under 13 *Del.C.* § 521.[5] *G. L. v. S. D.*, Del.Supr., 403 A.2d 1121 (1979). The maximum penalty established therein ($500.00 fine and/or 6 months imprisonment) is identical to the penalty for class B misdemeanors, 11 *Del.C.* §§ 4206(b) and 4207(b). As such, prosecutions under § 521 are barred by the Statute of Limitations of 2 years mandated for class B misdemeanors under 11 *Del.C.* § 205(b)(3).[6] Under 13 *Del.C.* § 522, in lieu of penalties in criminal prosecution for child non-support, the Court "may place the defendant on probation and as conditions thereof impose orders as provided in § 512 and § 513."

The linkage for enforcement between civil and criminal proceedings under our Statute is thus quite clear. *G. L. v. S. D., supra.* It follows by analogy, in our opinion, that an order for retroactive support in a civil proceeding under § 513 should be limited, as would be a similar order in a criminal prosecution under § 522,

4. 13 *Del.C.* § 501(a) provides:
"§ 501. Duty to support minor child; duty to support child over 18 years of age.
"(a) The duty to support a child under the age of 18 years, whether born in or out of wedlock, rests primarily upon his parents."

5. 13 *Del.C.* § 521 provides:
"§ 521. Desertion or failure to support spouse or child; penalty.
"Any person who, without just cause, deserts or willfully neglects or refuses to provide for the support of a spouse in destitute or necessi- tous circumstances, or a parent who, without just cause, deserts or willfully neglects or refuses to provide for the support of a child under the age of 18 years and in destitute or necessitous circumstances, whether such child was born in or out of wedlock, shall be fined not more than $500 nor imprisoned for not more than 6 months, or both."

6. 11 *Del.C.* § 205(b)(3) provides:
"A prosecution for a class B misdemeanor . . . must be commenced within 2 years after it is committed."

to a period of 2 years prior to the date the petition for relief was filed.

In the present case, the petition was filed on August 26, 1977. Accordingly, the Husband may be subjected to a support order retroactive to August 26, 1975 only.

### III.

In determining the amount of retroactive support owed, the Family Court multiplied the present support figure of $2200.00 per month by the total number of months between January 1, 1973, the date of separation and November 30, 1978, the date of the Court's order—71 months—and arrived at a figure of $156,200.00. From that was subtracted the $50,000.00 previously paid, leaving $106,200.00 as the amount due. As an incentive, the Family Court further ordered that if the arrearage was paid within 18 months, the Husband could take $2. credit for every dollar paid, thereby reducing his outstanding obligation to $53,-100. The Superior Court found, without elaboration, that such calculation was an abuse of discretion. As a general formula for the period allowable, we disagree.

The Family Court is vested with broad discretion in fashioning support orders. See, *Lucy K. H. v. Carl N. H.*, Del.Fam.Ct., 415 A.2d 510 (1979). The basic requirements that the Court must consider are enumerated in 13 *Del.C.* § 514.[7] In accordance with the provisions of that Section, it is incumbent upon the Trial Court to consider the "manner of living" enjoyed by the child prior to the separation of the parents.

It is evident from the record that the Family Court did so. It is no answer to say that present needs are an unfair guide to the past because the child's lowered standard of living in the past can never be improved by a retroactive support award. Such rule would encourage disregard of the parental duty of support for as long a period as possible. Neither equity nor the spirit of the Statute permits.

Reversed and remanded for further proceedings consistent herewith.

---

**7.** 13 *Del.C.* § 514 provides:
"§ 514. Determination of amount of support.
"In determining the amount of support due to one to whom the duty of support has been found to be owing, the Court, among other things, shall consider:
"(1) The health, relative economic condition, financial circumstance, income, including the wages, and earning capacity of the parties, including the children;
"(2) The manner of living to which the parties have been accustomed when they were living under the same roof;
"(3) The general equities inherent in the situation."