Charles W. TULLOCH, II, Respondent
Below, Appellant,

v.

Kathleen FLICKINGER, Petitioner
Below, Appellee.

Supreme Court of Delaware.

Submitted: Oct. 14, 1992.
Decided: Nov. 16, 1992.

H. Alfred Tarrant, Jr. (argued), and Thomas D. Shellenberger, Cooch and Taylor, Wilmington, for appellant.

Robert A. Penza (argued), Heiman, Aber & Goldlust, Wilmington, for appellee.

Before VEASEY, C.J., HORSEY and HOLLAND, JJ.

HORSEY, Justice:

This appeal in a child support action contests an order of the Family Court sustaining a master's wage attachment of periodic annuity payments received by obligor from an insurance company. The periodic amounts payable to the child support obligor, respondent, resulted from a medical malpractice settlement of a pre-marital personal injury claim of respondent for damages for disability, including pain and suffering.

The proceedings had their origin in a petition by the child's mother, Kathleen Flickinger ("petitioner"), for attachment of the "income" of the father, Charles W. Tulloch II ("respondent"), for his failure to comply with a master's Interim Consent Order for periodic support filed pursuant to 13 *Del.C.* § 513. Respondent had stipulated to an attachment of his income under section 513 in the event of his default in his support undertaking. Respondent had also listed two sources of income: wages from his employer, the State of Delaware, and a disability annuity from an insurance company. The record is unclear whether the petitioner, in seeking attachment under section 513, sought a discretionary attachment of "property" under subsection 513(a) or a mandatory attachment of "income" under subsection 513(b), or both.[1] Regardless, Family Court, in its review *de novo*, framed the issue solely as whether a wage or income attachment lay under subsection *513(b);* and the court failed to consider or address its discretionary authority to attach respondent's annuity income as "property," if not wages, under subsection 513(a). Family Court then held the monthly annuity payments received by respondent to be tantamount to wages, even though the payor was not his employer, and subject to wage attachment under 13 *Del.C.* §§ 513(b)(5) and (6). We reverse.

We conclude that the payments do not constitute *income* from an employer, subject to mandatory attachment, under 13

---

**1.** The reason for lack of clarity of the record may in part be attributed to the inappropriateness of the Family Court forms available for use of a party seeking attachment of income or property other than wages paid by an employer.

*Del.C.* § 513(b)(1), (5) and (6). The record on appeal is unclear, in part perhaps due to the unavailability of appropriate court forms, whether petitioner may also have sought a discretionary attachment of respondent's *property* under 13 *Del.C.* § 513(a)(6). Therefore, we remand the matter for determination of that issue, if originally fairly raised below, with jurisdiction reserved.

## I

In May 1991, following mediation in Family Court by the parties of their obligation to support their daughter, the parties entered into an Interim Consent Order for child support, which was approved by a Family Court master. The May 6 master's order required Tulloch to pay support in the amount of $315 per month. The order also provided for an "Income Attachment" of Tulloch's income, pursuant to 13 *Del.C.* § 513, with the attachment stayed until the filing of a notice of default by father in his undertakings for more than seven days. The consent order was based in part upon Tulloch's Financial Report Form 16(a), under which he identified his employer as "State of Delaware, Legislative Hall, Dover," stated his monthly gross wage, and then listed as "income from other sources" a monthly income of $750 from a workmen's compensation disability. Additionally, Tulloch listed on his Form 16(a) "periodic loss of work with consequent reduction of income resulting from ... amputation of leg."

Thereafter petitioner initiated contempt proceedings against Tulloch by seeking an attachment of his "monthly insurance proceeds" through an "income attachment," pursuant to 13 *Del.C.* § 513. Petitioner also modified the Family Court form for her listing of respondent's employer by striking the words "employed by" and inserting, "Respondent is: Receiving Insurance Benefits from: Safeco Life Insurance Company ... Seattle, Washington."

Respondent contested the attachment of the payments, again amending the Family Court printed form by stating in part, "The payments sought to be attached are payments by an insurance company resulting from a personal injury settlement. They do not constitute 'income' as defined under 13 *Del.C.* § 513(b)(5) in that they are not payments made by Respondent's 'employer.'"

On September 24, 1991, a Family Court master issued an order attaching Tulloch's income from the insurance proceeds. Tulloch sought a review *de novo* and Family Court affirmed. The court held that the monthly annuity payments were subject to attachment under section 513(b)(5) and (6) and directed that the income attachment issued by the Family Court master continue in force. Tulloch appeals the decision.

On appeal, Tulloch reiterates his contention below that Family Court committed legal error in attaching the insurance payments, arguing that such payments do not constitute "income" under 13 *Del.C.* § 513(b)(1) and (5); and he further contends that the court erred in finding Safeco to be his "employer" under section 513(b)(6).

## II

█ The question presented is a question of law; and there are no disputed issues of fact, except as previously noted with respect to the record below. The issue on appeal is whether Family Court may, pursuant to 13 *Del.C.* § 513(b)(5) and (6), attach monthly insurance payments due an obligor annuitant and received in settlement of a personal injury claim exclusively attributable to disability and pain and suffering. This Court will review, *de novo*, questions of law decided by the trial court. *Fiduciary Trust Co. v. Fiduciary Trust Co.*, Del.Supr., 445 A.2d 927 (1982).

## III

In 1974, the U.S. Congress determined that a more uniform, nationwide child support system was necessary, primarily to recoup from absent parents payments under Aid to Families with Dependent Children ("AFDC"). 42 U.S.C. § 602. Title IV–D of the Social Security Act was created to implement a state run, federally over-

seen, system built upon cooperation and compliance incentives.[2]

Title IV–D required states to implement statutes and procedures to collect efficiently child support payments or risk losing some federal welfare funding. States experimented with various programs to collect support payments. Eventually, wage withholding became the dominant and most effective method of collecting child support payments.[3]

In July 1983, the Delaware General Assembly enacted amendments to 13 *Del.C.* § 513 requiring mandatory wage attachment. 64 *Del. Laws*, c. 139. Most notably, paragraph (b) was added, stating in part, "Where a duty to support has been determined to exist, the Court shall attach the Defendant's wages if any...." *Id.*

As a result of the success of wage assignment in Title IV–D of the Social Security Act of 1974, Congress passed the Child Support Amendments of 1984.[4] Specifically, the Act requires states to implement mandatory procedures to improve the collection of child support.

Section 666(b)(1) of the Act requires that wages of a delinquent parent against whom a support order has been issued or modified be withheld. 42 U.S.C. § 666(b)(1). Section 666(b)(8) allows a state to extend its system of withholding to include withholding from forms of income other than "wages" in order to assure that child support owed by absent parents will be collected without regard to the type of income or the nature of the income producing activity. 42 U.S.C. § 666(b)(8); *see also* 45 C.F.R. 100(f).

In apparent response to these amendments, the Delaware General Assembly passed the 1986 amendments to 13 *Del.C.* § 513. *See* 65 *Del.Laws*, c. 228. Among the changes was the specific substitution of the word "income" for "wages" in those sections where the court is mandated to attach where a duty to support has been found.

"Income" is defined in 13 *Del.C.* § 513(b)(5) as

> any form of payment made by the obligor's employer to an individual, regardless of source, including, but not limited to, wages, salary, vacation pay, severance pay, bonuses, compensation as an independent contractor, workers' compensation, disability, sick pay, SUB benefits, unemployment compensation, railroad retirement, pensions, annuity and retirement benefits....

"Employer" is defined as "an individual, partnership, association, corporation, trust, federal agency, state agency, or political

---

**2.** Pub.L.No. 93–647, § 101, 88 Stat. 2351 (1975) (codified at 42 U.S.C. §§ 651–660); *see also,* Ball, *The Income Withholders Role in Child Support Cases,* U.S. Department of Health and Human Services, Administration for Children and Families, Office of Child Support Enforcement (1991).

**3.** Ball, *The Income Withholder's Role in Child Support Cases,* U.S. Department of Health and Human Services, Administration for Children and Families, Office of Child Enforcement (1991).

**4.** Under the Child Support Amendments of 1984 and its regulations, every state was required to have:

> a) Income withholding language in all of its new or modified orders, IV–D and non–IV–D;
> b) Provisions for mandatory implementation of income withholding in existing IV–D cases when triggered, whether or not the order contains income withholding language;

c) A trigger for income withholding to begin no later than the earliest date:
> i) on which one month's amount of support becomes past due;
> ii) on which the absent parent requests withholding; or
> iii) an earlier date that a state selects;

\* \* \* \* \* \*

> i) laws that command an employer to withhold from the obligor's wages the amount specified by the notice, and forward the withheld amount to the designated payee; employers are permitted to deduct an optional handling fee for themselves that do not exceed the Consumer Credit Protection Act limits when combined with the amount of support withheld;

\* \* \* \* \* \*

> k) laws that hold the employer liable for amounts that should have been withheld but were not, after the employer received proper notice of the withholding....

Pub.L.No. 98–378, 98 Stat. 1305 (1984) (codified in part at 42 U.S.C. §§ 666, 667).

subdivision paying or obligated to pay income". 13 *Del.C.* § 513(b)(6).

## IV

■ The 1986 amendments to 13 *Del.C.* § 513(b) clearly evidence an intent of the General Assembly to extend Delaware's system of mandatory attachment to include attachment of any payment of "income" by an employer to an employee-obligor, regardless of form of payment or type of employer, consistent with 42 U.S.C. § 666(b)(8) and C.F.R. § 303.100(f). Additionally, 65 *Del.Laws*, c. 228, § 11, relating to the 1986 amendments, provides, "This act shall be liberally construed to effectively carry out the purpose of the act."

While the Legislature has substituted a far broader definition of "income" subject to attachment, the source of the payments subject to attachment has remained the obligor's employer. Thus, the *sine qua non* for invoking the mandatory attachment provisions of section 513(b) is that the payments sought to be attached be received from the obligor's employer. The legislative history of 13 *Del.C.* § 513, in concert with Title IV–D of the Social Security Act, compels us to conclude that the provisions of section 513(b) are employer focused and driven. Employment income remains the lodestar for mandatory attachment. *See* 64 *Del. Laws*, c. 139 (enacting 13 *Del.C.* § 513(b)); 65 *Del. Laws*, c. 228;[5] *see also* Pub.L. No. 93–647, § 101, 88 Stat. 2351.[6]

Subsection (5) of section 513(b) defines the character of an obligor's income which is subject to mandatory attachment *and* requires that it be a payment from an obligor's employer. Subsection (6) is not meant to define what entities are deemed to be an "employer," but simply to illustrate in all-inclusive language the variety of employers against whom an income at-tachment will lie. The plain meaning of subsections (5) and (6), when read in conjunction, is that mandatory attachment is limited to income payments due an obligor from an entity who is in an employer-employee relationship with the obligor.

Here, since no employer-employee relationship existed between the obligor Safeco Insurance Company and Tulloch, Family Court was without authority under section 513(b) to attach Safeco's payments to Tulloch. The payments attached were not income from employment by respondent or income for lost employment benefits. While the Legislature intended section 513(b) to be liberally construed, the legislative mandate that income to be attached originate with the obligor's employer may not be disregarded. The payments made by Safeco to respondent also cannot be construed as a recovery of lost income or lost earning capacity.

■ In reaching the contrary conclusion, the trial court interpreted the illustrative examples of "an employer" under section 513(b)(6) as a "statutory definition of employer [that] is not exclusive." Seizing upon the term "trust" within the examples of an "employer," the court concluded that because "passive trust income" of an unemployed obligor who is independently wealthy has been held subject to attachment for child support, the annuity payments received by respondent should be treated no differently."[7] The court then concluded that its reading of subsection (b)(6) was sufficient to overcome any presumption created by section 513(b)(1) and (5) that income subject to attachment under section 513(b) is confined to payments attributable to or resulting from an employer-employee relationship.

The court has thereby confused its mandatory authority under section 513(b) to attach income payments of an employer

---

5. Chapter 228 designates subsection (b) of section 513 as paragraph (b)(1); substitutes "income" for "wage(s)" in new paragraph (b)(1); and adds new paragraph (b)(5), which originally stated in part, "For purposes of Chapter 4, 5 and 6 of this Title, 'income' is defined as any form of payment made by the obligor's employer to an individual...."

6. This law, Title IV–D of the Social Security Act of 1974, and the regulations adopted thereunder, in particular subparagraphs (i) and (k), are discussed above. *See supra* n. 4.

7. The court cited no authorities in support of this conclusion.

due a child support obligor with its discretionary authority under section 513(a)(6) to attach or sequester property interests of an obligor in discharge of a child support obligation, and supporting decisional law of this court.[8] Examples of case law recognizing the discretionary authority of the property attachment authority of the Family Court include *Patricia M.D. v. Alexis I.D.*, Del.Supr., 442 A.2d 952, 954–55 (1982), and *Mark T. v. Judith T.*, Del.Supr., 430 A.2d 792 (1981). None of these cases involves the construction and application of section 513(b), which was first enacted in 1983. *See supra* n. 4.

While we find the attachment of respondent's property to be impermissible under section 513(b), as previously noted, the question remains whether respondent's property was not subject to attachment by the trial court pursuant to the authority conferred upon it under 13 *Del.C.* § 513(a)(6). Since such an attachment involves a discretionary exercise of authority by Family Court, we decline to address the issue in the first instance. Therefore, we remand the case to Family Court for clarification of the record and for such further proceedings as are consistent herewith and with the record below.

\*　　\*　　\*

The judgment of the Family Court is REVERSED, and the matter is REMANDED for further proceedings consistent with this Opinion, with jurisdiction RESERVED under Rule 19(c) and for return from remand within 30 days.

---

**8.** Section 513(a)(6) provides:
　Where the duty of support has been determined to exist, the Court may:

　　\*　\*　\*　\*　\*　\*

　(6) Enforce its order by attachment of the defendant or by sequestration of property; and. . . .