IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAVID ZACHERY,[1] | § | |
| | § | No. 493, 2017 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | in and for New Castle County |
| | § | |
| DIVISION OF CHILD SUPPORT | § | File No. CN04-09734 |
| SERVICES/FAITH ZACHERY, | § | Petition No. 16-34608 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |
| | § | |

Submitted: April 27, 2018
Decided: July 10, 2018

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

# **O R D E R**

This 10th day of July 2018, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)    The respondent-appellant, David Zachery ("the Father"), has filed an appeal from the Family Court's decision, dated October 27, 2017, affirming a Family Court Commissioner's child support order.[2]  We find no error or abuse of discretion in the Family Court's decision.  Accordingly, we affirm the Family Court's judgment.

---

[1] The Court previously assigned pseudonyms to the appellants under Supreme Court Rule 7(d).
[2] *D.Z. v. F.Z.*, 2017 WL 5191875 (Del. Fam. Ct. Oct. 27, 2017).

(2)     The record reflects that, in 2006, the Family Court entered an ancillary order awarding Faith Zachery ("the Mother") alimony of $1,150 per month once one party left the marital home. Although the alimony order was intended to be temporary until a child support order was entered, neither parent applied for child support until 2016. In October 2016, the Father stopped paying the $1,150 in monthly alimony because only one of the parties' three children was still in high school, and gave the Mother a check for $300.

(3)     On November 2, 2016, the Division of Child Support Services filed a petition on behalf of the Mother against the Father for support of the parents' only remaining minor child, who was born in March 2000. A mediation was scheduled for April 4, 2017. After the parties were unable to reach an agreement at the mediation, a Family Court Commissioner issued an interim new support order, dated April 24, 2017, requiring the Father to pay $1,461 per month for child support.

(4)     A hearing on the child support petition was scheduled for August 3, 2017. A Family Court Commissioner entered a permanent support order, dated August 14, 2017, requiring the Father to pay, effective November 3, 2016, $1,605.00 plus $45.00 per month in arrears/retroactive support for child support. The order also allocated cash medical support 71% to the Father, 29% to the Mother.

(5)     The Father requested review of the Commissioner's order.  On October 27, 2017, the Family Court affirmed the Commissioner's order.  This appeal followed.

(6)     This Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[3]  We will not disturb the Family Court's rulings on appeal if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical reasoning process.[4]  We review legal rulings *de novo*.[5]  If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[6]

(7)     The Father's arguments on appeal may be summarized as follows: (i) the Family Court erred in calculating his wages for purposes of his child support obligation based on Department of Labor figures, instead of pay records the Father provided; (ii) the Family Court's calculation of his child support obligation was erroneous because parents' financial obligations and medical support for a child must be equal under 13 *Del. C.* §§ 501 and 701; (iii) the Family Court should not have applied the *Melson* formula to calculate his support obligation; (iv) the Family Court violated his rights to due process and equal protection by failing to appoint counsel to represent him; and (v) the child support orders, including the award of

---

[3] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).
[4] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).
[5] *Id.*
[6] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 67 (Del. 2003).

back support, violated his constitutional rights under the Eighth, Thirteenth, and Fourteenth Amendments of the United States Constitution.

(8) In calculating the Father's wages, the Family Court Commissioner relied upon Department of Labor figures instead of pay records provided by the Father. Although the Mother provided pay stubs from July 2017, her 2016 tax return and her 2016 W-2 as directed by the notice for the August 3, 2017 hearing, the Father only provided records of his pay in July 2017, which showed wages of $1,002 per week. The Father claimed he could not find his W-2s from 2016 or 2015, and had not filed his taxes in two years.

(9) The Father did not dispute, however, that he made $152,473 in 2015 and close to that in 2016. The Father worked overtime for most of his career after the children were born. Department of Labor figures showed that the Father earned $34,765 in the third quarter of 2016, $36,951 in the fourth quarter of 2016, and $49,076 in the first quarter of 2017. Based on those figures, the Commissioner calculated the Father's monthly wages as $13,421.

(10) The Family Court did not err in accepting the Commissioner's reliance on the Department of Labor figures instead of the weekly pay records provided by the Father. The Department of Labor figures are consistent with the amount the Father admitted to earning in 2016. The Father failed to provide his 2016 W-2 and tax return. The pay records that the Father did provide did not show his year-to-date

4

income, overtime, or shift differential. As the Family Court concluded, it appears that the Father may "have intentionally attempted to provide evidence of an income less than his actual earnings."[7] Under these circumstances, the Family Court did not err in relying on the Department of Labor figures to calculate the Father's income.

(11) The Father also contends that the Family Court's calculation of his child support obligation is erroneous because parents' financial obligations and medical support for a child must be equal. In support of this argument, the Father relies on § 501(c), which provides "[t]he duty to support a child under 18 years of age…shall rest equally upon both parents" and § 701(a), which provides parents "are equally charged with the child's support, care, nurture, welfare and education." The Family Court rejected this argument, finding that the specific provisions of § 514, which identifies the criteria for determining support, outweighed the general provisions of §§ 501 and 701.[8] This ruling is consistent with *Davis v. Davis* in which we held that §§ 501 and 701 do "not amount to a law requiring that each parent pay child support in an equal amount."[9] The Father's argument is therefore without merit.

(12) The Father next challenges the Family Court's application of the *Melson* formula. He argues that the *Melson* formula is not a law. The *Melson* formula, a uniform procedure for calculating child support, "operates as a rebuttable

---

[7] *D.Z.*, 2017 WL 5191875, at *2.
[8] *Id.*
[9] 1987 WL 35849, at *1 (Del. Jan. 5, 1987).

presumption in all child support cases in Delaware."[10]  To rebut the presumptive application of the formula, the Father had to show it would produce an inequitable result.[11]

(13)  The Family Court concluded that the Father had failed to meet his burden of rebutting the presumptive applicability of the *Melson* formula.[12]  We agree. As the Family Court noted, the Father offered no evidence of the expenses for the child, no evidence of extraordinary expenses he was paying for the child, no evidence that the award would exceed the parties' historical lifestyle,[13] and no evidence that the child spent significant time in his household.[14]  The Father did not show that the application of the *Melson* formula would produce an inequitable result.

(14)  The Father next argues that the Family Court violated his rights to due process and equal protection under the Fourteenth Amendment by failing to appoint counsel to represent him while the Mother had counsel through DCSS.  Even assuming the Father was indigent based on his claim that he could not afford to hire an attorney after entry of the interim child support order, this claim is without merit. "The right to have counsel appointed at State expense in any proceeding is

---

[10] *Sentner v. Sentner*, 799 A.2d 1154, 1159 (Del. 2002) (citations omitted).
[11] *O'Malley v. Div. of Child Support Enforcement/Kelly Cross*, 1998 WL 700177, at *1 (Del. Aug. 20, 1998).
[12] *D.Z.*, 2017 WL 5191875, at *3.
[13] The Father argues that the historical lifestyle of the family supports deviation from the *Melson* formula on appeal, but did not raise this claim in the Family Court.  We will not consider it for the first time on appeal.  Supr. Ct. R. 8.
[14] At the August 2017 hearing, the Mother testified that the child had not done any overnight visits with the Father since November 2016.  Tr. at 10 (Del. Fam. Ct. Aug. 3, 2017).

6

determined by the due process requirements in the United States Constitution and the Delaware Constitution."[15] Under the United States Constitution, due process "is not a fixed concept but implicitly means 'fundamental fairness' in the context of specific circumstances."[16] The Delaware Constitution "explicitly guarantee[s] fundamental fairness in the administration of justice for the citizens of Delaware, with regard to the specific context, in all causes of action."[17]

(15) There is a presumption that an indigent litigant has a right to appointed counsel only when his personal liberty is at stake.[18] This presumption must be weighed against the factors set forth in *Mathews v. Eldridge*.[19] These factors are: (i) the private interests at stake; (ii) the government's interest; and (iii) the risk the procedures used will result in erroneous decisions.[20] After evaluating the *Eldridge* factors, the Family Court correctly found that the Father did not have a right to appointed counsel.

(16) As the Family Court recognized, the Father's private interest—the amount of child support he pays between November 2016 and likely June 2018 when

---

[15] *Watson v. Div. of Family Servs.*, 813 A.2d 1101, 1106 (Del. 2002) (citing U.S. Const. amend. XIV, § 1 and Del. Const. art. I, § 9).
[16] *Id.* (citing *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 31 (1981)).
[17] *Id.* at 1107.
[18] *Id.* (citing *Lassiter*, 452 U.S. at 33-34).
[19] 424 U.S. 319, 335 (1976); *Watson*, 813 A.2d at 1108.
[20] *Eldridge*, 424 U.S. at 335.

7

the child is eighteen and has graduated high school[21]—is limited.   The State has a strong interest in ensuring that children are supported through the establishment and enforcement of child support orders.[22]   The procedures used by the Family Court in this case created little risk of an erroneous result.   The Father was served with the petition for child support, received notice of the mediation and the August 3, 2017 hearing, and had an opportunity to be heard, to present evidence, and to testify. Balancing the Father's interest in the amount of child support he was required to pay, the government's interest in child support, and the small risk of an erroneous result, the Father was not entitled to appointment of counsel at State expense.

(17)   As to the Father's equal protection claim, this Court has held that child support statutes are in the "field of social welfare and economics," and do not touch on "fundamental rights" in the context of equal protection cases or "create a disadvantage in respect to a 'suspect classification.'"[23]   The Father has failed to identify any suspect classification.   The presence of DCSS' counsel for a parent seeking child support bears a rational relationship to the State's legitimate interest in ensuring that children are financially supported.

---

[21] 13 *Del. C.* § 501(d) ("Both parents have a duty to support their child over 18 years of age if such child is a student in high school and is likely to graduate. This duty ends when the child receives a high school diploma or attains age 19, whichever event first occurs.").
[22] 13 *Del. C.* § 2201 et seq.
[23] *Davis*, 1987 WL 35849, at *2.

(18) Finally, the Father argues that the child support orders, including the award of back support, violated the Eighth, Thirteenth, and Fourteenth Amendments. The Father did not raise his arguments that the child support orders constituted excessive fines in violation of the Eighth Amendment and subjected him to involuntary servitude in violation of the Thirteenth Amendment in the Family Court so we will not consider them for the first time of appeal.[24] As to his due process claims, the Father was served with the petition for child support and received notice of the mediation and the August 3, 2017 hearing. He had an opportunity to be heard, to present evidence, and to testify. This Court has upheld the award of retroactive support.[25] In this case, retroactive support was only awarded back to November 2016 when the petition for child support was filed and the Father had stopped paying the alimony awarded. The Family Court did not err in concluding that the Father's Fourteenth Amendments rights were not violated.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

/s/  James T. Vaughn, Jr.
Justice

---

[24] Supr. Ct R. 8.
[25] *Patricia M.D. v. Alexis I.D.*, 442 A.2d 952, 955 (Del. 1982).