Joseph W. SMITH, Jr., Petitioner Below, Appellant,

v.

Diane E. FRANCISCO, Respondent Below, Appellee.

No. 473, 1998.

Supreme Court of Delaware.

Submitted: May 25, 1999.
Decided: Aug. 13, 1999.

Joseph W. Smith, Jr., pro se.

Robert Burton Coonin, of Berkowitz, Schagrin, Coonin and Cooper, P.A., Wilmington, Delaware, for appellee.

Before HOLLAND, HARTNETT and BERGER, JJ.

HOLLAND, Justice:

The petitioner-appellant, Joseph W. Smith, Jr. (the "Father") and the respondent-appellee, Diane E. Francisco (the "Mother"), were married on June 28, 1991. Three and one-half years later the parties separated. During a brief attempted reconciliation, the Mother became pregnant. In September of 1995, the Father peti-

tioned for divorce. The Divorce Decree was granted by the Family Court on December 8, 1995.

In this appeal, the Father challenges the final child support judgment entered by the Family Court on multiple grounds. The Father also challenges a separate final judgment awarding the Mother attorney's fees in a visitation dispute. We have concluded that: the child support judgment must be reversed, because the Family Court misapplied the Melson Formula; and, the judgment awarding attorney's fees must be affirmed.

### Facts

The parties' child, Bret, was born on March 24, 1996. The Mother filed an original Petition for Child Support on September 5, 1996. On November 27, 1996, the Family Court entered an interim child support order requiring the Father to pay the Mother $434 per month "pending modification upon application."

Bret's parents have joint custody. Bret's primary residence, however, is with the Mother. Pursuant to separate judgments by the Family Court, the Father exercises overnight visitation with his son approximately 130 nights per year, or approximately 11 nights per month (not including holidays and the two-week vacation period). Bret is also in the Father's care for eight or more hours on 233 days a year. Bret is in his Father's care every Tuesday, Wednesday, and Friday, and the parents divide Thursdays, Saturdays and Sundays. The record reflects that the Father's contact schedule with Bret is more than twice the amount of time that the normal Family Court guidelines provide for a non-custodial parent.[1]

On May 27, 1997, the Father filed a Petition for Modification of Child Support. As of that date, no hearing on a permanent child support order had been scheduled by the Family Court. Almost one year passed before a Family Court Master entered a child support order on April 14, 1998. The Father filed an appeal *de novo*.

On October 5, 1998, a judge of the Family Court conducted a *de novo* child support hearing. The parties stipulated to their incomes during the relevant periods of time. The Father's stipulated income was $3,257 gross per month during the years 1997 and 1998. The Mother's stipulated monthly gross income was $1,655 during 1997 and $1,722 during 1998. Following the *de novo* hearing, the trial judge established child support in accordance with the Melson Formula, and ordered it to be paid retroactively.

### Melson Formula
### Delaware Child Support Calculation
### Statute, Family Court Rule, Official Forms

In establishing child support, the Family Court is directed by statute to consider a number of factors:

In determining the amount of support due to one to whom the duty of support has been found to be owing, the [Family] Court, among other things, shall consider:

(1) The health, relevant economic condition, financial circumstance, income, including the wages, and earning capacity of the parties, including the children;

(2) The manner of living to which the parties have been accustomed when they were living under the same roof;

(3) The general equities inherent in the situation.[2]

Congress mandated that each state adopt child support guidelines, as a condi-

---

1. The normal Family Court contact schedule provides for the non-custodial or secondary residence parent to have visitation: every other weekend; five weeks in the summer; and to share or alternate holidays.

2. 13 *Del.C.* § 514.

tion for receiving certain federal funds.[3] Congress subsequently required that those guidelines operate as a rebuttable presumption.[4] Congress also directed each state to review and update its child support guidelines periodically.[5]

The guidelines used by the Family Court in support cases preceded the Congressional mandate and are known as the Melson Formula.[6] The three basic principles of the Melson Formula are:

> Parents are entitled to keep sufficient income to meet their most basic needs in order to encourage continued employment.

> Until the basic needs of children are met, parents should not be permitted to retain any more income than that required to provide the bare necessities for their own self-support.

> Where income is sufficient to cover the basic needs of parents and all dependents, children are entitled to share in any additional income so that they can benefit from the absent parent's higher standard of living.[7]

The Melson Formula originated as a matter of common law and evolved from these three basic principles into a sophisticated algebraic equation that has both fixed and variable components.[8] The Melson Formula has been described as the most comprehensive child support model extant in the United States due to the number of factors directly addressed in calculating the initial presumptive determination.[9]

The Melson Formula's principles are currently set forth in Delaware Family Court Civil Rule 52(c):

> (c) *Child Support Cases.* The Court, in order to provide a uniform, equitable approach in applying Delaware law to all child support cases, shall consider the following:

> (1) Each support obligor's monthly net income.

> (2) The absolute minimum amount of income each support obligor must retain to function at maximum productivity.

> (3) The number of support obligor's dependents in an effort to apportion the amount available for support as equally as possible between or among said dependents according to their respective needs.

> (4) The primary child support needs and the primary support obligation of each obligor.

> (5) The available net income for a Standard of Living Adjustment (SOLA) to be paid by each support obligor after meeting their own primary needs and those of dependents.

> (6) A consideration of the factors set forth in 13 *Del.C.* Section 514.[10]

An integral part of Family Court Civil Rule 52(c) are two comprehensive official forms that are currently used in its application.[11]

---

3. Child Support Enforcement Guidelines, 42 U.S.C. § 667 (1998). For a historical discussion of the federal mandates, *see Dalton v. Clanton,* Del.Supr., 559 A.2d 1197 (1989).

4. Pub.L. No. 100–485, 102 Stat. 2343.

5. *Id.*

6. The Melson Formula is named after its judicial craftsman, the Honorable Elwood F. Melson, Jr., of the Family Court of the State of Delaware. The formula was a judicial response to 13 *Del.C.* § 514 which required the Family Court to consider the economic conditions of the parties involved, their standard of living and the overall equities of the situation. For a discussion of the Melson Formula, *see*

*Dalton v. Clanton,* Del.Supr, 559 A.2d 1197, 1202–09 (1989).

7. *Dalton v. Clanton,* 559 A.2d at 1203, *citing The Delaware Child Support Formula: Study and Evaluation, Report to the 132nd General Assembly,* Family Court of the State of Delaware, at 1–2 (April 15, 1985).

8. *Id.* at 1209.

9. *Id.*

10. Fam.Ct.Civ.R. 52(c).

11. Form 509 (Appendix I) (Child Support Calculation) and Form 509–1 (Appendix II) (Instructions for Child Support Calculation).

■ The Melson Formula operates as a rebuttable presumption in calculating child support in Delaware.[12] "As a rebuttable presumption, the Delaware procedure provides for a uniform approach to child support decisions, unless the Family Court is persuaded that an application of the Melson Formula would be inequitable."[13] One decade ago, this Court held that the "procedure used by the Family Court of the State of Delaware, in deciding child support cases, known as the Melson Formula, and reflected in Family Court Rule 52(c) and its official Forms 509(p) and 509 is consistent with the letter and spirit of 13 *Del.C.* §§ 504, 514 and 10 *Del.C.* § 907(5)."[14]

### Melson Formula Updated Quadrennially

Although the basic principles of the Melson Formula have remained constant, its sophistication has increased. In accordance with the federal funding mandate, the Delaware Child Support Formula has been reviewed quadrennially. A committee is appointed by the Chief Judge of the Family Court to review the Delaware guidelines and recommend revisions every four years. All of the Family Court judges consider those recommendations and decide what, if any, adjustments should be made to the Melson Formula.

Over the last decade, the General Assembly's statutory mandate and Family Court Rule 52(c) have not changed. The periodic review process has resulted in modifications, however, to the Family Court's official forms. Accordingly, we must determine whether the revisions to the Melson Formula that are reflected in the present official forms remain consistent with the General Assembly's statutory directives for establishing child support awards.

### Melson Formula Revisions Extended Visitation Adjustments

The process of periodically reviewing the Melson Formula has resulted in quantitative changes to the fixed components of the Family Court official forms and has also caused modifications in the weight that some of the variable components in the Melson Formula are initially accorded. The changes to fixed components are illustrated by revisions to the Melson Formula's self-support reserve for the non-custodial or secondary residence parent that was set at $550 in 1990, $620 in 1994, and $750 in 1998. The evolving changes given to some of the variable components in the Melson Formula are illustrated by the issue in this case, i.e., the initial weight to be given for visitation by the non-custodial or secondary residence parent that exceeds the normal visitation schedule.

The 1990 Delaware quadrennial child support review committee consulted Robert G. Williams, Ph.D., a nationally recognized expert on child support guidelines, to assist in the preparation of the 1990 Delaware Child Support Formula Evaluation and Update ("1990 Report").[15] Dr. Williams performed an economic analysis of the Melson Formula under the aegis of the Child Support Guidelines Project of the Federal Office of Child Support Enforcement.[16] As part of that analysis, Dr. Williams informed the Delaware Committee that some state child support guide-

---

12. *Dalton v. Clanton,* 559 A.2d at 1211.

13. *Id.* (citation omitted).

14. *Id.* at 1210–11. The official forms cited were those that were being used by the Family Court when *Dalton* was decided.

15. Delaware Child Support Formula Committee, *The Delaware Child Support Formula—Evaluation and Update,* 4 (1990). *See Dalton*

*v. Clanton,* Del.Supr., 559 A.2d 1197, 1207–09 (1989) (discussing some of Dr. Williams' national work on matters relating to child support guidelines and his analysis of the Melson Formula).

16. Delaware Child Support Formula Committee, *The Delaware Child Support Formula—Evaluation and Update* (1990).

lines allow an adjustment for extended visitation when at least 25 to 30% of the child's nights are spent with the payor.[17] Dr. Williams' report on the Melson Formula included the following analysis and recommendation:

> There are two issues with the current formulation. First, the shared custody provision is imprecise and it is probably being applied inconsistently in terms of whether a parent qualifies for an adjustment and in terms of the amount of the adjustment if it is applied. States with shared custody adjustments in their guidelines typically establish a specific threshold of physical sharing, usually 25 or 30 percent of overnights, above which the parent is entitled to the adjustment. Setting a specific threshold eliminates questions about the amount of custody sharing needed to qualify for credit.

> Second, in calculating a shared custody adjustment, most states follow similar logic as used in the Melson Formula for a $^{50}\!/_{50}$ time split, but with one important exception. In recognition of substantial duplicated costs associated with shared custody, most states with shared custody adjustments increase the basic child support obligation (excluding child care and extraordinary medical expenses) by 50 percent in such cases. This takes into account the additional housing, utilities, furnishings, and transportation costs associated with such arrangements.

> By not taking duplicated costs into account when it applies a shared custody adjustment (as in the $^{50}\!/_{50}$ sharing case), the Melson Formula yields orders that do not reflect the full costs of rearing children in shared custody cases. For example, in a situation involving 2 children due support, a father with $2,000 net income, and a mother with $1,000 net income, the father would pay $562

per month if the mother has sole custody (assuming no child care, medical, or other expenses). With a $^{50}\!/_{50}$ sharing arrangement, the father would pay $181 per month.

> If the father has physical custody 33 percent of the time, and a shared custody adjustment is calculated using the same logic as for the $^{50}\!/_{50}$ sharing arrangement, then the father would pay $308 per month. Since a 33 percent arrangement involves only somewhat more physical custody than a normal visitation arrangement, it can be seen that the drop from $562 to $308 gives excessive financial credit for the increased expenses involved with that level of shared custody. If the basic child support amount were "surcharged" by 50 percent, however, the Melson Formula would yield orders of $462 at the 33 percent sharing level and $272 at the 50 percent level. This would be more comparable to levels set in other states with shared custody adjustments and appears to more accurately reflect the actual levels of child rearing costs in such situations.

> Given the experience of other states with this issue, we suggest that the Family Court establish a definite threshold of physical custody above which the adjustment would be made. That threshold should be set at 25 or 30 percent of annual overnights. The adjustment should follow the same logic as is used at the 50 percent level, except that primary support and SOLA amounts should be increased by half to account for duplicated costs.[18]

The 1990 Report of the Delaware Child Support Committee recommended permitting the consideration of a downward adjustment in the Melson Formula's initial calculation to compensate the payor for the

---

**17.** *Price v. Howard,* Del.Fam., CN 91–6199, James, J. (April 16, 1996). *See Ogard v. Ogard,* Alaska Supr., 808 P.2d 815 (1991). *See also Erickson v. Erickson,* N.M.App., 978 P.2d 347 (1999).

**18.** Robert G. Williams, Ph.D., *Analysis of the Delaware Child Support Formula,* 9–10 (July 15, 1989).

increased expenditures that were concomitant with an extended visitation schedule. The Delaware Family Court judges adopted that suggestion to prevent the initial calculations of child support orders in Delaware from being inequitable.[19] When the Family Court official forms were revised in 1990, the instructions provided:

> the total monthly support amount is based on the primary support obligation of each parent plus the SOLA obligation. The amount of monthly child support owed depends on the custody arrangement for the child(ren) and the child support obligation of each parent. *This formula contemplates normal visitation arrangements. Some adjustment may result if visitation is significantly beyond the norm* . (Emphasis added).

An adjustment for extended visitation in the initial Melson Formula calculation meant that the primary residence parent received less child support than would be provided for under a basic visitation schedule. Consequently, the burden was on the primary residence parent to rebut the presumptive applicability of the Melson Formula calculation by demonstrating that it was *inequitable* to adjust the child support award downward in an amount that was attributable to the extended visitation of the non-custodial or secondary residence parent.

Since 1994, however, the official Family Court forms have provided for the initial presumptive amount of child support to be calculated without regard to any extended visitation unless the child spends *equal* time with each parent. The 1994 Delaware Child Support Formula Committee Report on the Evaluation and Update of the Formula ("1994 Report") recommended that:

> The Court shall not consider the proportion of time a child spends visiting with the obligor parent as a factor in estab-

lishing or modifying a support obligation. However, where there is joint custody, with shared residence as well as a sharing of expenses of the children, the parent with the higher support obligation under the Formula shall pay to the other parent one-half of the difference of their monthly obligations. "Shared residence" for child support purposes shall be defined as essentially a $^{50}\!/_{50}$ division of the children's time between the parties, as established by Court order or agreement of the parties. This revision recognizes that a shared residential arrangement requires each parent to maintain a household for the child(ren). Visitation beyond the traditional every-other-weekend and two weeks in the summer does not routinely translate into a sharing of primary expenses and sometimes spurs custody/visitation litigation.[20]

The Family Court changed the instructions with its official child support forms in 1994 to state that "the amount of monthly child support owed depends on the custody arrangement for the child(ren) and the child support obligation of each parent. An adjustment may result if the parents share custody and residence of the child(ren) by agreement or by prior court order. There will be no adjustment to the calculation for 'extreme' visitation schedules."

■ The October 1, 1998 ("1998 Report") quadrennial review of the Delaware Melson Child Support Formula reiterated the 1994 philosophy defining "shared residence" as a $^{50}\!/_{50}$ division of time and further refined that 1994 paradigm shift in the Melson Formula's initial calculation. That recommendation in the 1998 Report was approved by the Delaware Family Court's judges and is now reflected in the Instructions For Child Support Calculation, as follows:

---

**19.** Delaware Child Support Formula Committee, *The Delaware Child Support Formula— Evaluation and Update* (1990).

**20.** Delaware Child Support Formula Committee, *The Delaware Child Support Formula— Evaluation and Update,* 11 (1994).

The total monthly support amount is based on the primary support obligation of each parent plus the SOLA obligation. The amount of monthly child support owed depends on the custody arrangement for the child(ren) and the child support obligation of each parent. *An adjustment is made if the parents equally share custody, residence and expenses of the child(ren)* by agreement or by prior court order. A credit will be given for the support of other children to whom the obligor owes a duty of support. The credit will be calculated based on the percentages in the table below.[21]

Therefore, the burden is now on the non-custodial or secondary residence parent, who has increased visitation that does not equal one-half of the child's time, to demonstrate that it would be inequitable not to make a reduction in the Melson Formula's initial calculation on the basis of the proportionate time the child spends with each parent.

### Extended Visitation Equities
### Current Official Forms Approved

■ There has been considerable expert commentary about the economics of child rearing and equitable models have been developed for determining child support on the basis of the child's proportionate time with each parent when that time exceeds basic visitation.[22] The experts have failed to agree on a single economic approach for properly determining child support in an extended visitation arrangement. There does appear to be a consensus among the experts, however, that the equities of making an adjustment in a child support award because of extended visitation can be decided most equitably on a case-by-case basis.

The Family Court's current official forms reflect the philosophical changes in the Melson Formula's initial consideration of extended visitation schedules during the last decade. In fact, those official forms are different in many respects from the ones that were before this Court when *Dalton* was decided. Nevertheless, we have concluded that the Family Court's current official forms are compatible with the statutory mandate for the same reasons that this Court stated ten years ago:

> We attach particular significance to the fact that the Melson Formula is recognized and operates as a rebuttable presumption in all child support cases. As a rebuttable presumption, the Delaware procedure provides for a uniform approach to child support decisions, unless the Family Court is persuaded that an application of the Melson Formula would be inequitable. Therefore, "all persons are ensured of equal treatment, without restricting the authority of the [Family] Court to establish an order outside of the scope of the formula when the unique facts of a particular case so warrant."[23]

When a non-custodial or secondary residence parent has extended visitation, the equitable issue remains the same today as it always has been during the Melson Formula's evolution. The changes in the Family Court official forms from 1990 to 1998, with regard to computing the initial presumptive child support determination, have simply shifted the burden of making

---

**21.** Form 509–1 (Appendix II) (Instructions for Child Support Calculation) (emphasis added).

**22.** Marygold S. Melli & Patricia R. Brown, *The Economics of Shared Custody: Developing an Equitable Formula for Dual Residence,* 31 Hous.L.Rev. 543, 546–47 (1994). *See American Law Institute, Principles of the Law of Family Dissolution: Analysis and Recommendations* § 3.14, *Determining The Amount of A Child Support Award In Dual Residence Cases*

(Tentative Draft No. 3, Part II, 4/8/98). *See also* Laura W. Morgan, Child Support Guidelines: Interpretation and Application 21 3.03[a], at 3–25 to 3–26 (1997 Supp.). *See generally* K. Getman, *Changing Formulas for Changing Families: Shared Custody Must Not Shortchange Children,* 10 Family Advocate 47 (Spring 1988).

**23.** *Dalton v. Clanton,* Del.Supr., 559 A.2d 1197, 1211 (1989) (citations omitted).

the equitable argument in an extended visitation arrangement from the primary residence parent to the non-custodial or secondary residence parent. The ultimate focus for the Family Court in an extended visitation arrangement continues to be the statutory mandate to consider "the general equities inherent in the situation" before the entry of the final child support award.[24]

### Father's Extended Visitation Melson Formula Initial Calculation

■ A proper application of the Melson Formula requires more than the mechanical use of an algebraic equation.[25] The *sine qua non* of the Melson Formula's compatibility with the Delaware General Assembly's statutory mandate is the Family Court's acknowledgment that the initial calculation operates as a rebuttable presumption.[26] In this case, the Family Court acknowledged that the Melson Formula operates as a rebuttable presumption but misconstrued how to treat the Father's extended visitation argument in making the initial calculation and, as a result of that error, did not properly apply the Melson Formula as a rebuttable presumption.

The Father argued that the presumptive applicability of the Melson Formula's initial calculation was rebutted because the result was inequitable under the circumstances of his extended visitation schedule. In response to that argument, the trial judge quoted the following passage from the 1998 Delaware Child Support Formula Evaluation Report:

The Court shall not consider the proportionate time a child spends visiting with the obligor parent as a factor in establishing or modifying a support obligation. However, whether it is joint custody, with a shared residence, as well

as a sharing of expenses of the children, the parent with the higher support obligation of the children shall pay to the other parent one-half of the difference of their month obligations. "Shared residence" for child support purposes shall be defined as essentially a 50⁄50 division of the child's time between the parties, established by Court Order or agreement of the parties.[27]

The trial judge acknowledged that the "Father has more than the Standard Visitation that the Family Court follows: but did not meet the definition of "shared residence" because the visitation arrangement did not result in a 50⁄50 division of [Bret's] time between the parties." The trial judge then held that because the Father had not rebutted the Melson Formula by exhibiting shared residence "the presumptive applicability of the Delaware Child Support Guidelines shall be followed."

The fallacy in the Family Court's analysis is the failure to recognize that extended visitation schedules have always been a *weighted variable* component in the Melson Formula's algebraic equation. In the current Melson Formula, no weight is given to an extended visitation schedule in making the initial calculation unless there is a 50⁄50 division of the child's time between the parties. If there is a 50⁄50 division of the child's time, however, that 50% magnitude of extended visitation is accorded proper weight in making the *initial* Melson Formula calculation.

In this case, the Father's extended visitation schedule could not properly be considered in making the initial Melson Formula calculation because it did not constitute 50% of Bret's time. The Father, however, was entitled to equitable review by the Family Court on the issue of whether the presumptive applicability of the initial calculation had been rebut-

---

24. 13 *Del.C.* § 514(3).

25. *Dalton v. Clanton,* 559 A.2d at 1201–02, 1212.

26. *Id.* at 1210–11.

27. Delaware Child Support Formula Committee, *the Delaware Child Support Formula—Evaluation and Update,* 9 (1998)

ted. Unfortunately, the Family Court in properly rejecting the Father's extended visitation argument relating to the initial calculation incorrectly construed the Father's burden as being the necessity to rebut the Melson Formula's presumptive applicability *before* that initial computation was made.

Properly framed, the issue before the Family Court required an initial calculation pursuant to the Melson Formula without any adjustment for the Father's extended visitation and, thereafter, a consideration of whether the equities in the Father's extended visitation schedule rebutted the presumptive applicability of the initial calculation. The approach used by the Family Court would always deny any equitable consideration to a parent with extended visitation that was not tantamount to a $50/50$ division of the child's time. The Family Court's refusal to consider any equitable adjustment to the Father's extended visitation schedule because it did not constitute a $50/50$ division of Bret's time is inconsistent with this Court's holding in *Dalton:*

> The mathematical result which is the product of the Melson Formula can never be the basis of a child support order under the Delaware procedure, until that result passes the litmus tests of the rebuttable presumption. When the calculation according to the Melson Formula is mixed together with the specific facts in a case, the result must be equitable. If the result is inequitable, the presumption is rebutted, and the support calculation pursuant to the Melson Formula must yield to the extent that is necessary to balance the equities in the case.[28]

The proper use of the Melson Formula as a rebuttable presumption is only considered *after* the initial mathematical calculation has been made.[29]

We hold that the Family Court committed reversible error by not properly addressing the Father's contention that the presumptive applicability of the initial mathematical calculation of the Melson Formula had been rebutted by his extended visitation schedule. In this case, the facts may, or may not, support a conclusion that the Father has sustained his burden of overcoming the presumptive applicability of the Melson Formula. The Family Court must make that determination in the first instance. Only after the Family Court properly considers the presumptive applicability of the initial Melson Formula calculation and, thereafter gives the reasons for its ultimate conclusion can there be meaningful appellate review in this case.[30]

### *Remand for Credit Wage Attachment Payments*

The record reflects that the Father had been making child support payments directly to the Mother prior to the institution of a wage attachment against him. The parties reached an agreement that child support payments in the amount of $7,956 had been paid directly to the Mother by the Father prior to the imposition of the wage attachment. Accordingly, the Family Court ordered that the Father be credited with that stipulated amount.

The Mother's attorney was apparently under the mistaken impression, however, that after the wage attachment, the Father's child support payments had been processed through the Division of Child Support Enforcement and stated that on the record to the trial judge. The Father did not object to the accuracy of that statement by the Mother's attorney. In reliance on this representation, the trial judge directed the Division of Child Sup-

**28.** *Dalton v. Clanton,* 559 A.2d at 1212.

**29.** *See Price v. Howard,* Del.Fam., CN 91–6199, James, J. (April 16, 1996). *Compare Trotto–Milloway v. Milloway,* Del.Fam., No. CN96–08063, 1997 WL 878697 Crowell, J. (July 25, 1997).

**30.** *Dalton v. Clanton,* 559 A.2d at 1212.

port Enforcement to credit the Father with any additional payments that the Father made by virtue of the wage attachment.

In this appeal, the Father argues that, since the wage attachment resulted in direct payments to the Mother, the Division of Child Support Enforcement cannot use its records to give him proper credit for those payments. The Mother acknowledges the validity of that argument in this Court. The Mother's appellate attorney has represented that she will cooperate completely in properly crediting the Father with all direct payments she received pursuant to the wage attachment.

The child support judgment is being reversed for the reasons stated in the preceding portions of this opinion. Consequently, this matter will be remanded to the Family Court for further proceedings on the subject of child support. Upon remand, the Family Court should enter an appropriate order regarding the Father's request for proper credit on all child support payments that the Mother received directly before and after the wage attachment. The Family Court should also permit the Father to reargue why any final child support judgment should not be entered retroactively.

### Attorney Fee Award
### Deferential Appellate Review

■ The Family Court ordered that the Father pay $360 to reimburse the Mother for the attorney's fees she incurred in defense of the Father's unsuccessful Motion for Reargument on the Family Court's denial of the Father's Motion to Revise Visitation Schedule. The Father filed the motion leading to the $360 attorney fee award two months after the Family Court ruled on the Father's Motion for Reargument following a remand from this Court. The Father argues that the attorney fee award was a punitive response by the Family Court to the Father's Motion for Reargument.

■ The Family Court has broad discretion in assessing attorney's fees.[31] Therefore, this Court must apply the deferential abuse of discretion standard of appellate review. In the absence of an abuse of discretion, this Court must affirm the Family Court's award even though we may have reached a different conclusion. The record does not reflect an abuse of discretion.

### Conclusion

The final judgment on the subject of child support is reversed. The final judgment awarding $360 in attorney's fees is affirmed. This matter is remanded to the Family Court for further proceedings in accordance with this opinion.

---

31. *Lee v. Green,* Del.Supr., 574 A.2d 857   (1990).

# APPENDIX I

Form 509
(Rev. 11/98 )

## THE FAMILY COURT OF THE STATE OF DELAWARE

Case Name:_____          Period Covered._____
File Number:_____

### CHILD SUPPORT CALCULATION

|  |  | Father | Mother | Total |
|---|---|---|---|---|
| Net Income Derived From (___) Tax Return (___) Tax Table | | | | |
| 1. A–Monthly Gross Earned Income | | $_____ | $_____ | |
| B–Monthly Gross Other Income(type)_____ | | +_____ | +_____ | |
| C–Total Monthly Gross Income (Line 1A + Line 1B) | | =$_____ | =$_____ | |

2. Total Tax    Fed    +FICA    +State    +City=    +Other =
  –Father    _____  _____  _____  _____  _____   –_____
  –Mother    _____  _____  _____  _____  _____   –_____

3. Allowable Deductions
          Medical Ins    + Qual.Retirement    +Union Dues    +Other =
  –Father    _____        _____            _____        _____   –_____
  –Mother    _____        _____            _____        _____   –_____

|  | Father | Mother | Total |
|---|---|---|---|
| 4. Monthly Net Income (Line 1C - Lines(2+3)) | =$_____ | =$_____ | |
| **Net Income Available for Primary Support** | | | |
| 5. Parent's Self Support Allowance | –$ 750 | –$ 750 | |
| 6. Net Income Available for Primary Support (Line 4 - Line 5) | =$_____ | =$_____ | =$_____ |
| 7. Share of Total Available Net Income (Line 6 / Line 6 Total) | _____% | _____% | |
| **Child(ren)'s Primary Support Need** | | | |
| 8. Number of Children Due Support in this Support Action | | | |
| 9. Primary Support Allowance (from table below) | $_____ | $_____ | $_____ |
| 10. A–Monthly Child Care Expenses of Working Custodial Parent | _____ | _____ | +_____ |
| B–Monthly Other Expenses for Child | _____ | _____ | +_____ |
| 11. Total Primary Need (Line 9 + Line 10A + Line 10B) | | | =$_____ |
| 12. Primary Support Obligation (Line 7 X Line 11 Total) | $_____ | $_____ | |
| **Standard of Living Adjustment (SOLA)** | | | |
| 13. Amount Available for SOLA (Line 6 - Line 12) | $_____ | $_____ | |
| 14. SOLA Percentage (from table below) | _____% | _____% | |
| 15. SOLA Amount (Line 13 X Line 14) | $_____ | $_____ | =$_____ |
| | | | (per child) |
| **Total Monthly Support Amount** | | | |
| 16. Monthly Child Support Obligation (Line 12 + Line 15) | | | _____ |
| 17. Number of Dependent Children Not in This Action | | | |
| 18. Credit for Support of Other Dependent Children (Line16 X % from table) | =$_____ | =$_____ | |
| 19. Amount Retained by Custodial Parent | _____ | _____ | |
| 20. Total monthly Child Support Amount Ordered (Line 16 – Line 18) | $_____ | $_____ | |
| 21. Pay Period Amount: Weekly ___ Bi-Weekly ___ Semi-Monthly ___ | =$_____ | =$_____ | |

| SOLA Adjustment | | |
|---|---|---|
| # of Children | Primary Support | SOLA % |
| 1 | $310 | 16% |
| 2 | $575 | 26% |
| 3 | $815 | 33% |
| each additional | +$200 | +5% |

| Credit for Support of Other Children | |
|---|---|
| # of Children | Credit % |
| 1 | 16% |
| 2 | 26% |
| 3 | 33% |
| Each additional | 5% |

# APPENDIX II

## THE FAMILY COURT OF THE STATE OF DELAWARE

### INSTRUCTIONS FOR CHILD SUPPORT CALCULATION PREFACE

The Family Court of the State of Delaware has established the Delaware Child Support Formula under Civil Rule 52(c). This formula outlines the procedure for determining child support awards in the state of Delaware. The formula is based on the following principles:

- Each parent is entitled to keep a minimum amount of income for their basic needs.

- The child(ren)'s basic needs are taken care of before the parents may retain any additional income.
- If income is available after the primary needs of the parents and child(ren) are taken care of, the child(ren) is (are) entitled to share in any additional income of the parents.

In determining each parent's child support obligation the Court considers each parent's ability to pay. Ability to pay includes: the health, income and financial circumstances, and earning capacity of the parties, including the children. The manner of living to which the parties have been accustomed when they were living under the same roof and the general equities inherent in the situation are also considered. See 13 *Delaware Code* § 514.

## USE OF THE DELAWARE CHILD SUPPORT FORMULA

The Delaware Child Support Guideline serves as a rebuttable presumption for establishing all child support awards in the state of Delaware. The Court will use the formula in setting support unless it finds that the results would not be in the best interest of the child(ren) or would be inequitable to the parties involved. *See*, e.g. *Dalton v. Clanton*, Del.Supr., 559 A.2d 1197 (1989).

## NET INCOME

Net income is used for calculating the child support amount under the Delaware Child Support Formula. Figure net income by taking monthly gross income and subtracting allowable payroll deductions. Monthly gross income and allowable deductions are defined below.

**Note:** all figures for this section and other sections must be made in monthly amounts. If figures are given in weekly amounts then multiply the amount by 52 and then divide by 12 to get the correct monthly amount. If figures are for bi-weekly amounts then multiply the amount by 26 and then divide by 12.

## Line 1

**A—Monthly Gross Earned Income:** Monthly Gross Earned Income includes income from salaries, wages, commissions, and bonuses; and income from self employment. **Document all earned income with the most recent tax returns, W–2 Forms, and the three most recent pay stubs.** *See*, e.g. *Kane v. Kane*, Del.Fam., No. 341–87 Gallagher, J., (April 4, 1989).

**B—Monthly Gross Other Income:** Monthly Gross Other Income includes but is not limited to dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, veteran's benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, and alimony or maintenance received.

Expense reimbursements or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business should be counted as other income if they are significant and reduce personal living expenses. Such payments might include a company car, free housing, or reimbursed meals.

**Note:** Any social security disability benefits as well as pension/disability benefits issued by private corporations paid directly to a minor child (included in this support action) on behalf of a disabled parent shall be added to the disabled parent's income. That parent will then receive a dollar-for-dollar credit off of the support obligation for these payments received by the child. When a child receives social security disability benefits on his/her/own behalf, they shall be counted as income of the custodial parent or the parent receiving the benefits on behalf of the child(ren). Social Security benefits of children who are not

included in the child support order will not be included.

**Exclusions from income:** Temporary Assistance to Needy Families (TANF), Supplemental Security Income (SSI) if it goes to the parents, and Food Stamps (FS).

*Attributed Income:* When an able parent is not working full time or is working below full earning capacity, determine why there is a limitation on earnings. *See,* e.g. *DCSE v. James Barrows,* Del. Supr., No 147, 1989 Holland, J. (February 21, 1990); *R.T. v. R.T.,* Del.Supr., 494 A.2d 150 (1985); *Dolgas v. Dolgas,* Del.Fam., No.1974–85, Gallagher, J. (December 9, 1988). If the obligor has voluntarily chosen to earn less than his/ her capacity the Court will attribute income. First, look at the obligor's previous earning history to see what type of earnings potential he/she has. If no earnings history is present look at the obligors employment qualifications. Determine what someone with comparable qualifications would earn in the local job market. The Court may use wage surveys published by government agencies to assist in attributing income. These surveys will be available in the Law Libraries of each Family Court. If income is attributed in either of these two fashions use withholding tables to determine the appropriate withholding. The minimum amount that can be attributed under any of these circumstances is a gross monthly income figure of $1,052. **Note:** If a party fails to appear, or bring adequate income information to Court he/she may be attributed with at least as much income as the other party.

**C—Total Monthly Gross Income:** Total Monthly Gross Income is the sum of Monthly Gross Earned Income (Line 1A) and Monthly Gross Other Income (Line 1B).

**Line 2—Total Tax:** Determine the amount of tax withheld in a month. Base withholding on Single tax status with one (1) exemption. Look up the amount of withholding on the withholding tables. Enter the amount for each parent for each of the separate taxes identified. Add these taxes across the line and enter the result in the appropriate column.

**Line 3—Allowable Deductions:**

**Medical Insurance**—Enter the cost of monthly medical insurance premiums paid by either parent, regardless of persons covered by the policy.

**Qualified Retirement Plan**—Enter the amount deducted for pension or, if the employer offers no pension plan, voluntary contribution to a 401(k) or similar IRS approved retirement plan, up to 3% of gross income.

**Union Dues**

**Other**—Enter the monthly amount of any court ordered alimony payments to the other parent, and if not already deducted from gross income, allowable business expenses if the person is self-employed or required by his/her employer to purchase supplies etc. Add these deductions across the line and enter the result in the appropriate column. Enter the monthly amount of any involuntary deductions being withheld from the parent's paycheck.

**Note:** Deductions for payments on credit union debts or car payments are not allowed except to the extent that such debts are incurred for indispensable items in use by the dependents or necessary health care.

**Line 4—Monthly Net Income:** Calculate the Monthly Net Income by taking the Total Monthly Gross Income in Line 1 C and subtracting the amounts in Lines 2 and 3.

### NET INCOME AVAILABLE FOR PRIMARY SUPPORT

The Court has established an absolute minimum amount of income that a parent must retain to function at maximum productivity. Subtract each parent's self sup-

port allowance from their net income and calculate the net total income available to support the child(ren). Then, figure each parent's share of the total income.

**Line 5—Parent's Self Support Allowance:** Each parent's self support allowance equals $750. This amount has already been entered on the form.

**Line 6—Net Income Available for Primary Support:** Subtract the Parent's Self Support Allowance ($750) (Line 5) from each parent's Monthly Net Income (Line 4). Enter the result for each parent. Add the figures for Father and Mother to get the total available income. Enter the result in the total column.

**Line 7—Share of Total Income Available:** Divide the Net Income Available for Primary Support for each parent (Line 6) by the Total Net Income Available for Primary Support (Total Line 6). Enter the result for each parent.

### CHILD(REN)'S PRIMARY SUPPORT NEED

The Court has established minimum levels of income needed to support one or more children. This primary support allowance is added to any work related child care expenses. Each parent's share of the child(ren)'s primary support need is based on each parents share of net income available.

**Line 8—Number of Children Due Support in this Support Action:** Enter the number of children due support in this support action under the parent's household where they live. Add the number in the Father's and Mother's column and enter the result in the Total column. Do not include children from other families. They are considered in another part of the support formula.

**Line 9—Primary Support Allowance:** Enter the Primary Support Allowance that matches the number of children in line 8 for each household (see table below for Primary Support Allowance). Add the number in each column and enter the result in the Total column.

**Line 10**

A—**Monthly Child care Expenses:** Enter the actual Monthly Child Care Expenses that are the result of a parent working. Document these expenses with receipts from payments for care. No hypothetical or attributed child care costs are permitted. This documentation must be attached to the Form 16a.

B—**Other:** Enter other necessary monthly expenses incurred because of special needs of the child(ren).

**Line 11—Total Primary Need:** To arrive at the Total Primary Need add the Primary Support Allowance, the Child Care Expenses, and Other (Lines 9 + 10A + 10B).

**Line 12**

A—**Primary Support Obligation:** Multiply the Share of Total Income Available to each parent (Line 7) by the Total Primary Need (Line 11). Enter the result for each parent.

| Number of Children | Primary Support Allowance | SOLA% |
|---|---|---|
| 1 | $310 | 16% |
| 2 | $575 | 26% |
| 3 | $815 | 33% |
| each additional child | +$200 | +5% |

### STANDARD OF LIVING ADJUSTMENT (SOLA)

When there is income available after the parents have met their own and any of their dependents primary support needs, the SOLA adjustment is made. SOLA is designed to give the child(ren) a share in each parent's economic well being similar to what the child(ren) would have received if the parents had remained together. *See,* e.g. *Shuba v. DCSE/Reese,* Del.Supr., 564 A.2d 1084 (1989); *Flaherty v. Fidance,* Del.Fam., No. B–2900, James J. (January 8, 1980); *I.B. v. R.S.W.B.,* Del.Fam., No. A–3000 Melson, J. (November 10, 1977).

**Line 13—Amount Available for SOLA:** Subtract the Primary Support Obligation (Line 12) from the Net Income Available for Primary Support (Line 6) for each parent. Enter the result for each parent.

**Line 14—SOLA Percentage:** Enter the SOLA percentage, from the table above, which corresponds to the Number of children Due Support in this Support Action (Line 8 Total). If there are more than three children add 5 percent for each additional child up to 49 percent. The SOLA percentage shall not exceed 49 percent unless there is a prior finding of a specific need.

**Line 15**

A—**SOLA Amount:** Multiply the Amount Available for SOLA (Line 13) by the SOLA Percentage (Line 14). Enter the result for each parent. Add the amount for each parent to get the total SOLA for the child(ren) and place the figure in the Total column.

B—**SOLA Amount Per Child:** In cases where the children of this union reside in separate households, take the total SOLA amount (Line 15 A—Total) and divide by the Total Number of Children Due Support in this Action (Line 8 Total) to get the per child SOLA.

### TOTAL MONTHLY SUPPORT AMOUNT

The total monthly support amount is based on the primary support obligation of each parent plus the SOLA obligation. The amount of monthly child support owed depends on the custody arrangement for the child(ren) and the child support obligation of each parent. An adjustment is made if the parents equally share custody, residence and expenses of the child(ren) by agreement or by prior court order. A credit will be given for the support of other children to whom the obligor owes a duty of support. The credit will be calculated based on the percentages in the table below.

**Note:** There will be no adjustment to the calculation for "extraordinary" visitation schedules.

**Line 16—Monthly Child Support Obligation:** Add the Primary Support Obligation (Line 12) for each parent to the SOLA Amount (Line 15). Enter the result for each parent.

**Line 17—Number of Dependent Children Not in This Action:** Enter the number of qualified children of other unions to whom the obligor owes a duty of support. This credit is applicable to children in the obligor's home and children outside the obligor's home provided there is a court order for support or proof of a pattern of support.

**Line 18—Credit for Support of Other Dependent Children:** Enter credit on obligor's line. Calculate the credit by multiplying Monthly Child Support Obligation (Line 16) by the appropriate percentage from the table below.

| Number of Qualified Children | Credit Percentage |
|---|---|
| 1 | 16% |
| 2 | 26% |
| 3 | 33% |
| Each Additional | 5% |

**Line 19—Amount Retained by Custodial Parent:** Enter the Monthly Child Support Obligation (Line 16) where the parent is the custodian of the child(ren). Enter zero where the parent is not the custodian. Where there is a split custody arrangement (a child or children in each parent's home), enter the amount of support required for the child(ren) in each parent's household. The SOLA amount for each child is the per-child SOLA which is calculated in the Total column of Line 15.

**Line 20—Total Monthly Child Support Amount Ordered:** Subtract the Credit for Support of Other Dependents (Line 18) from the Monthly Child Support Obligation (Line 16). The minimum order al-

lowed is $65/$117/$169/+$39 per month for 1, 2, 3 and more children respectively.

**Line 21—Pay Period Amount:** If the support amount is to be paid at intervals other than monthly check that appropriate period and determine the amount owed for the period based on the monthly support obligation. If the period is weekly, multiply the monthly amount (Line 21) by 12 and then divide by 52. If the period is bi-weekly, multiply the monthly amount by 12 and then divide by 26. If the period is semi-monthly, divide the monthly amount by 2. All child support obligations will be rounded to the nearest whole dollar amount.